ELLERBE, *Superintendent of Insurance*, v. BARNEY, *Appellant*.

In Banc, February 5, 1894.

1. **Mutual Benefit Society:** MEMBERSHIP: FORFEITURE: ASSESSMENTS. A certificate of membership in a mutual benefit society accepted by defendant provided that the beneficiaries therein named were on defendant's death to be paid a designated sum in consideration of an admission fee paid, and further sums to be paid by defendant so long as he should be a member, when duly assessed by its officers upon the deaths of other members of the society. The certificate also provided for a forfeiture of defendant's membership on nonpayment of any assessment within twenty days after notice. *Held*, that the contract is not unilateral and that defendant is liable for all assessments regularly made upon the deaths of other members occurring while his membership continued.

2. ——: ——: ——: ——. The forfeiture clause does not discharge a member from past society debts or dues.

3. ——: ——: ——: CONSIDERATION. The member's promise to pay the assessments when duly called to meet the obligations of the society accruing upon the deaths of other members is the consideration for the benefit he derives from his insurance as a member of the society.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*T. H. Bacon* and *Lubke & Muench* for appellant.

(1)    The association in question was doing a life insurance business on the assessment plan and its contracts are those of life insurance, just as much as the policies issued by the regular life insurance companies, hence the same rules applicable to life insurance contracts should be applied to this contract so far as possible. *Commonwealth v. Weatherbee,* 105 Mass. 149; *Farmer v. State,* 69 Texas, 561; *Berry v. Knights Templars,* 46 Fed. Rep. 439; *Masonic Aid Association v. Taylor,* 50 N. W. Rep. (S. Da.) 93; *Bolton v. Bolton,* 73 Maine, 299; *State v. Miller,* 66 Iowa, 26; *Rensenhouse v. Seeley,* 72 Mich. 603.    (2) A contract of life insurance is a peculiar contract in that its obligations are unilateral.    It contains no undertaking of the assured to pay premiums but simply gives him an option to pay or not, and thus continue the obligation of the association. *Ins. Co. v. Statham,* 93 U. S. 36; *Worthington v. Ins. Co.,* 41 Conn. 399; *Dungan v. Ins. Co.,* 46 Md. 492.    (3) The nature of the association and of kindred organizations is voluntary, and the members join with that understanding.    The levying of an assessment places them under simply a necessity of choosing whether they will pay it, or allow their certificate to lapse.    The penalty for nonpayment being a cessation of the obligation of the contract. *In re Protection L. Ins. Co.,* 9 Biss. 188; *Rood v. R'y etc., Ass'n,* 31 Fed. Rep. 62; *Burdon v. Mass., etc., Ass'n,* 147 Mass. 360.    (4) The consideration for the payment of an assessment is the · continuance of the

Ellerbe v. Barney.

protection afforded by the association until the next assessment matures. The company becoming insolvent before the time for the payment of assessments arrives made it impossible for it to give any consideration for the assessment levied. *In re Protection L. Ins. Co.*, 9 Biss. 188; *Burdon v. Mass., etc., Ass'n*, 147 Mass., 360; *Attorney General v. Ins. Co.*, 82 N. Y. 336; *Attorney General v. Ins. Co.*, 33 Hun, 138. (5) These life insurance organizations must not be confounded with the mutual fire insurance corporations where the obligation is to pay a *pro rata* on such losses as shall be sustained by the association. If this distinction is observed it explains the only case opposed to the views herein set forth, which is *McDonald v. Ross-Lewin*, 29 Hun, 87. The doctrine concerning liability of members of mutual fire insurance organizations is very different from that which applies in this case. May on Insurance, sec. 653.

*James E. Hereford* with whom is *M. W. Huff* for respondent.

(1) The United Masonic Benefit Association was a mutual insurance company. R. S. 1889, sec. 5860; *State ex rel. v. Ben. Soc.*, 72 Mo. 147; Bacon on Benefit Societies, page 175. (2) Premiums due such companies are recoverable. *Clark v. Middleton*; 19 Mo. 53; *Ins. Co. v. Geraldin*, 31 Mo. 30. (3) Neither insolvency nor cancellation of policy prevents recovery for losses suffered during life of policy; *Receiver v. Hite*, 94 Pa. St. 394; *Vanata v. Insurance Co.*, 31 N· J. Eq. 15; *Commonwealth v. Insurance Co.*, 112 Mass. 116; *Life Ass'n v. Rossiter*, 132 Pa. St. 314. (4) A member can not, by withdrawal, avoid any obligation incurred; *Borgraefe v. Knights of Honor*, 26 Mo. App. 218. (5) Issuance and acceptance of the certificates

furnish a sufficient consideration for agreement to pay any assessments made during. the life of the policy, and upon failure to pay an action will lie. *Receiver v. Lewin,* 29 Hun, 87. (6) A member is liable for all losses accrued up to termination of membership, and in case of insolvency the receiver may assess and bring action for assessments. *Receiver v. Lewin,* 29 Hun, 87.

MARTIN (*Special Judge*).—This is an action brought by the superintendent of the insurance department of the state, as receiver of the Masonic Mutual Benefit Society of Missouri (a mutual insurance organization), to recover the amount of certain assessments levied upon the members of the association to pay death losses. The defendant was a member of the organization. Shortly before the receiver took charge, the directors of the company regularly levied against defendant assessments amounting to $140.80, which assessments he refused to pay. The regularity of the assessments is admitted. The suit was originally before a justice of the peace, where judgment was rendered against defendant, who then appealed to the circuit court. There an amended statement was filed to which appellant demurred for the reason that it did not set forth a cause of action. The demurrer was overruled, and defendant declined to plead further, but appeared at the trial and demurred to plaintiff's evidence. The court gave judgment for plaintiff. After unsuccessfully moving for a new trial, defendant appealed to the supreme court. The case is, in effect, an agreed one, as all the facts are conceded.

Defendant became a member of the society in 1885, accepting two certificates (one in division B, the other in division C) in the nature of policies, the material parts of which follow, viz.:

"This certificate of membership witnesseth that

the Masonic Mutual Benefit Society of Missouri, in consideration of the representations made to it in his application for membership, and the sum of $6 to be paid by Charles E. Barney, of St. Louis,. state of Missouri, and the further sum to be paid by him to this society, within twenty days after the notice, duly mailed or delivered to him, of a death occurring in the membership of Division C, of this society, of $1.60 for each such death, as assessments therefor may be made, so long as he may be a member thereof, promises and agrees to and with the said Charles E. Barney well and truly to pay or cause to be paid to his children within sixty days after due notice and satisfactory proof of the death of said Charles E. Barney have been filed in the office of the secretary of the society, for every member in good standing in said division of this society as follows, for each member in said division of the first class seventy cents, of the second class seventy-five cents, of the third class eighty-five cents, of the fourth class ninety-five cents, of the fifth class $1.05, of the sixth class $1.20, of the seventh class $1.40, and of the eighth class $1.50. Provided, however, that the aggregate amount of the sum so paid shall in no case exceed the sum of $3,000.

"Upon this condition, however, that if the said Charles E. Barney shall fail to pay any assessment when the same becomes due and payable by him according to the by-laws of this society and the terms of this certificate, then this contract and agreement shall be null and void, and of no effect, and the said Charles E. Barney and the beneficiary therein shall forfeit all rights accruing under this certificate.

"This certificate is issued by the society and accepted by the holder and beneficiary therein upon the following express conditions and agreements:

'*First.* That the same is issued and accepted sub-

ject to the provisions of the articles of association and by-laws of this society,'" etc.

The certificates were duly executed by the president and secretary of the society. No question as to their form is raised. Afterwards the name of the company was changed to "United Masonic Benefit Association of Missouri," and its internal laws were amended so as to fix the sum to be paid on each certificate at $2,000, and the amount of assessment, for each death of a member, at $6.40.

The by-laws of the society bearing on the present controversy provide that, "upon the death of a member, or as soon thereafter as ordered by the executive committee, each member of the association, at the time such death occurred, may be assessed, and shall pay to the secretary of the association" the regular amount of the assessment above indicated. The by-laws then immediately proceed to declare it the duty of the secretary to notify by mail, each member of each, assessment upon his certificate, and then recite that "any member failing to pay such assessment within twenty days after the date of such notice shall have been served upon, sent or given to him, shall forfeit his membership in the association and all benefits and interests therefrom and therein; provided, that any payment of assessments after such forfeiture, or any notice to pay or subsequent assessment by the association, shall not have the effect to restore the person notified or paying, to membership or to any rights under his certificates until his application for reinstatement shall be presented and approved by the executive committee."

The defendant paid assessments until those now in dispute were called. The latter were regularly made by the proper officers of the society to pay the amounts due upon deaths of members in good standing, holding

valid certificates. Defendant was duly notified of
these assessments. Afterwards the insurance commis-
sioner, now plaintiff, took possession of the assets of
the concern, under the laws of Missouri, because of
the insolvency of the company, and now seeks to
compel payment of these assessments as assets, for the
benefit of those properly entitled to share therein.

I. It is apparent from the foregoing statement,
which was prepared by Judge BARCLAY, that the issue
in this case is one of law, to be determined by a con-
struction of the contract disclosed in the record.

On the part of the appellant it is contended that
he never became indebted for the assessments levied
against him, but that he had the option of forfeiting his
rights under the certificate by declining to pay them;
which forfeiture left the company without any right to
collect them. If this is a proper construction of the
contract, the judgment will have to be reversed. If,
however, these assessments constituted a liability of
the appellant from the date of their levy, payable after
notice given according to the by-laws, then the action
of the lower court will have to be affirmed.

In his contention the appellant argues that the
certificate held by him constituted a contract of life
insurance; which, in a general sense, may be conceded,
inasmuch as it provides for payment of an ascertaina-
ble sum upon the death of the holder. It is next
argued that, being a contract of life insurance, it must
necessarily possess the distinguishing features imputed
to such a contract by the courts, in being a unilateral
or one-sided undertaking of the assured as to all future
payments required of him. If he chooses to pay
them, the company is bound to continue the insurance.
If he declines to make further payments, the insurance
ends without imposing on him any liability on account
of them.

I am sensible of the danger in construing contracts, of attaching undue importance to particular words and phrases as controlling the intention of the parties, and overriding the presence and effect of other parts. All contracts should be construed with reference to the general object and purpose for which they were entered into by the contracting parties, and a rational and harmonious effect given to all the parts if possible. The construction that this is a unilateral contract in like manner and effect as a policy of life insurance, I propose to consider briefly on principle, and not on the analogy of names or accidental use of concurring phrases.

The unilateral feature contended for in this contract has been very generally imposed upon the contract of the regular old line premium-collecting life insurance companies. These companies were unable to commence business except upon capital paid in by the members or stockholders to be used in meeting death losses as they occurred. Until called for, the capital, along with all premiums not wanted for expenses, was required to be invested for profit and accumulation. The premiums were payable annually and invariably in advance. Upon payment of the first premium as a condition precedent, the assured received a policy covering him for one year, with the option to continue it by payment of other premiums. This payment constituted the full consideration of value to be paid during the year of insurance. Nothing in the shape of dues or assessments could be exacted from him for the period covered by the premium paid. If any of the old line companies should suddenly stop insuring and decline to issue another policy, every policy outstanding would be paid from the accumulated capital, as it matured. An inability to do so would put it out of line in the business of insurance, and indicate that it

had not been conducted and managed according to the principles upon which it was founded.

II. The certificate in controversy differs materially from the premium-paying policies of the old capital stock companies. It is the undertaking of a corporation organized on an entirely different basis. The Masonic Mutual Benefit Society of Missouri belongs to that class of life insurance companies known among insurance men by the name of fraternal beneficiary associations. The prototype of these organizations is met with in the friendly benefit societies of England appearing more than a century ago, which made provision for the relief of members in sickness, and for payment of a small sum at death, generally for defraying funeral expenses.

The organization of the modern fraternal beneficiary company consists of an association of members, who agree to assist each other and their families on occasions of disability and death by contributing money and means for aid and relief. On joining the association each member becomes bound to assist the others in the mode and for the object pointed out in the articles and by-laws of the association. The managing officers, whether incorporated or not, represent the association and discharge the function of enforcing and carrying out the purposes of the compact. Hence the certificate of membership in such an organization is a contract with every member of it, to be enforced by the managing officers as representatives or trustees for all the members of the concern. When the member joins he pays the admission fee, which is used to defray necessary expenses, but which is altogether too small to constitute a fund or capital wherewith to satisfy death losses. No fund or capital is kept on hand or invested for such a purpose. Indeed the economy underlying the plan of the organization aims at doing away with

the expense and loss incident to the management, investment and accumulation of capital. As a substitute therefor, each member promises to contribute an equal share with every other member upon occasion of every death in the membership, which is collected and paid over by the officers of the association to the wife or children of the deceased member, as the case may be. The ascertainment and declaration of death losses is left to the members of the association, and their action in that behalf is known as an assessment. They are bound to make these assessments on occasion of every death, and the wife or children of the deceased member or other beneficiary have the right to compel them to make and collect the assessments inuring to their benefit.

It is manifest that these assessments in their nature bear a near resemblance to the dues incident to membership in a friendly society, and constitute a consideration for the promised insurance of the association materially differing from the annual premium stock companies. When considered in the light of society dues, it will be admitted that a person can not by discontinuing his membership escape the obligation of paying those dues which accrued before the termination of his membership. I am not aware of anything in the organic structure of those organizations as thus defined, and to which the one in question seems to belong, which could bring them in conflict with the policy of the law. On the contrary, it will be found that they have very generally merited the approbation of the public. It is only when they have substituted for their fraternity dues promises of endowment to living members, payable, irrespective of disability or death, that they have been justly subjected to the charge of departing from the principles upon which

fraternal beneficiary associations can be safely conducted.

III. It is necessary next to consider whether or not the contract disclosed by the record in this case is in conformity with the avowed object of the association, to furnish aid and relief to the families of deceased members, and is sufficient in its phraseology and provisions to carry out that object and make it beneficially effective as to all of them. Of course the language of the certificate must be interpreted in connection with the by-laws and articles of association alluded to in its body. The certificate is expressly declared to be "issued and accepted subject to the provisions of the articles of association and by-laws of the society."

Section 1 of article 7 of the by-laws provides that "upon the death of a member, or as soon thereafter as ordered by the executive committee, *each member of the association at the time such death occurred* may be assessed and *shall pay* to the secretary of the association a fixed sum, according to the class of which the assessed was a member *at that time*, based upon the aggregate amount of benefit to which he or the beneficiary named therein or in section 1, article 6, of the by-laws is entitled under his certificate or certificates of membership."

The assessments in this case were at the rate of $6.40 each, in behalf of the beneficiaries of fifty-six members, who died while the appellant was a member of the association in good standing, amounting to the aggregate sum of $140.80. The beneficiaries of the deceased members must have acquired a right to these assessments intended for their relief; otherwise the primary object of the association as a society for the benefit of widows and orphans would fail. The assessment could have no value or meaning if they conferred no right on the beneficiaries to collect the amount so

assessed, and a corresponding obligation on the part of the members to pay them.   The principal, if not the only, fund provided for payment of them consisted in the obligation imposed by the by-laws of the members. Their liability took the place of capital and accumulated funds, and constituted substantially the only assets provided by the members for securing the aid and relief contemplated in the compact of association.

Thus we perceive that independent of the language of the certificate of membership the liability to pay assessments by the members was imposed by the by-laws and articles of association, as a debt or burden incident to membership.   This debt or burden, according to the by-laws recited, accrued as soon as the death occurred, and the assessment was declared.   It was payable at once, but according to the third section of the same article of by-laws, the time for payment was extended to twenty days after notice.   The time and manner of serving notice is definitely prescribed.   It then proceeds to declare that "any member failing to pay such assessments within twenty days after the date of such notice shall have been served upon, sent or given to him, shall forfeit his membership in the association, and all benefits and interests therefrom and therein."

There is nothing whatever in this language, providing as it does for the forfeiture of membership and discontinuance of the rights incident to it, which suggests or intimates a discharge from past society debts and dues.   In the first section of the article the assessment is expressly declared to be binding as a demand which the members must pay.   In the second section he forfeits his membership and rights by failure to pay after a notice of twenty days.   A condition of forfeiture of rights is a well known feature added to many contracts, which does not in itself discharge the obligations which have already accrued under it.   Such is

the case of forfeitures in leases and in most of the policies of mutual fire insurance companies. The natural effect of the forfeiture is to cut off the possibility of future obligations, but not to disturb the validity of past indebtedness. Something very positive would have to appear either in the express declaration of the contract or as a necessary implication from its nature to give it a different effect. No such declaration appears, and I have endeavored to show that precisely the contrary is implied in the nature and purpose of the contract in question.

Right here I may add that the fact that the obligations, attempted to be enforced in this case, arise, independently of the provisions of the certificate of membership, from the constitution and by-laws of the association, goes a great way in my mind to clothe them with the features and character of society dues, and to distinguish them from the premium of the old line insurance companies.

IV. In coming now to consider the language of the certificate itself, I think it will appear to be little else than a recital of the contract which we have found to be imposed on every member by the constitution and by-laws. It promises to pay to the children of the appellant, sixty days after notice of his death, a certain percentage on every member of the association in good standing, according to the class to which he belongs; provided that no payment of such percentage shall be permitted to exceed in the aggregate the sum $2,000.

As we have seen that the organic structure of the association did not contemplate that this percentage on the membership should be paid from the accumulated capital, but from assessments to meet death losses, it is natural to expect some allusion in the certificate to the prevailing method of raising funds with which to make

good the promised benefits of the association.    Accordingly we find it expressly provided in the certificate that the benefits inuring to the children of the appellant are agreed to be paid by the association " *in consideration*" of the admission fee "originally paid in by appellant, *and the further sum to be paid in by him to this society*," of the assessment made on him for every death occuring in the membership of the division to which he belonged, "*so long as he shall be a member thereof.*"

It thus appears that the obligation imposed on him by the by-laws to pay the assessments against him, is expressly declared to be of the consideration for the benefits promised to his children by the certificate.    The only way that he can make good the consideration for the certificate is to keep his obligation to pay the assessments.  And I may repeat that these obligations constituted the principal resources placed at the command of the association, to enable it to pay the death losses.

It is true that the certificate repeats the provision in the by-laws which terminates membership by non-payment of assessments.    But it goes no further than te debar the appellant of his rights, thus leaving his liabilities as they existed at the date of the forfeiture. The declaration that the certificate, after forfeiture, shall be null and void, relates to its future, not its past effect.

Now it appeared from admitted facts that the appellant was in full possession of all the rights of membership at the date of these assessments and that he continued to hold them up to the instant of forfeiture by his failure to pay such assessments.    If he had died after the assessments against him and before his failure to pay them, his children would have been entitled to the promised benefits of the certificate.    Having,

during all that time, had the benefits of the certificates upon consideration that he would pay his assessments, he is not in a position to withhold the consideration by refusing to keep his obligation. I am not prepared to approve the startling proposition that the appellant should have the privilege of paying or withholding at his pleasure the consideration promised for carrying a risk, after the risk had been carried. I do not regard this contract unilateral in the sense of relieving the assured from liability for insurance carried and consideration earned. No unilateral contract has ever been permitted to accomplish such an unjust result. I am satisfied that the judgment of the lower court is without error and should be affirmed; and it is so ordered. BARCLAY, GANTT and SHERWOOD, JJ., concurring; BLACK, C. J., BRACE and BURGESS, JJ., dissenting; MACFARLANE, J., not sitting.

BLACK, C. J. (dissenting).—I do not agree to the majority opinion filed in this case. Each certificate, it will be seen, contains this stipulation: "Upon this condition, however, that if the said Chas. E. Barney shall fail to pay any assessment when the same becomes due and payable by him according to the by-laws of this society, and the terms of this certificate, then this contract and agreement shall be null and void and of no effect, and the said Charles E. Barney and the beneficiary therein shall forfeit all rights accruing under this certificate."

After the certificates had been issued and various assessments levied and paid by the defendant, the name of the association was changed to that of the "United Masonic Benefit Association of Missouri." The by-laws were also amended so as to make the amount to be paid by the association on each certificate the fixed sum of $2,000, and so as to fix the amount to

be paid by the insured for each death loss at the sum of $6.40. The amended by-laws which have any bearing upon this case are as follows: .

"1. Upon . the death of a member, or so soon thereafter as ordered by the executive committee, each member of the association shall pay to the secretary of the association a fixed sum according to the class of which the assessed was a member at that time, based upon the aggregate amount of benefits to which he, or the beneficiary named therein or in section 1 of article 6 of these by-laws, may be entitled under his certificate of membership."

By the third by-law it is made the duty of the secretary of the company to notify each member of the assessment made upon him, and it then provides that "any member failing to pay such assessment within twenty days after the date of such notice which has. been served upon, sent or given to him, shall forfeit his membership in the association and all benefits and interests therefrom and therein: *Provided*, that any payment of assessments after such forfeiture, or any notice to pay a subsequent assessment by the association, shall not have the effect to restore the person notified or paying to membership or to any rights under his certificates, until his application for reinstatement, shall be presented to and approved by the executive committee."

The defendant paid several assessments under and pursuant to these amended by-laws. An assessment of $6.40 on account of each certificate was duly levied upon defendant on the fourth of December, 1891, of which he was properly notified by notice dated and mailed on the twentieth of January, 1892; and on the twenty-fifth of January, 1892, twenty other assessments of $6.40 each were duly levied, of which he was notified on the first of February, 1892. On the next day the

company was adjudged insolvent and was then placed in the hands of the superintendent of insurance. The defendant failed to pay the several assessments levied on the fourth of December, 1891, and on the twenty-fifth of January, amounting in all to $140.80, and it is these assessments which the superintendent seeks to recover by this suit.

The question whether these assessments constitute debts, to recover which suits may be maintained by the company or the superintendent of the insurance department, must be determined by the contracts; for it is the duty of the court to give effect to the contracts which the parties have made, and it has no right to build up a contract for them.

This court, in defining a life insurance contract, adopted and approved the language of Mr. Justice GRAY in the case of *Com. v. Wetherbee*, 105 Mass. 161, where it is said: "This is not the less a contract of mutual insurance upon the life of the assured, because the amount to be paid by the corporation is not a gross sum, but a sum graduated by the number of members holding similar contracts; nor because a portion of the premiums is to be paid upon the uncertain periods of the deaths of such members; nor because, in case of nonpayment of assessments by any member, the contract provides no means of enforcing payment thereof, but merely declares the contract to be at an end, and all moneys previously paid by the assured, and all dividends and credits accrued to him, to be forfeited to the company." *State ex rel. v. Benevolent Society*, 72 Mo. 160.

There can be no doubt but these certificates issued to the defendant are life insurance contracts, and it accomplishes nothing to say they are in a general sense life insurance contracts. Being life insurance contracts, the principle applicable to such contracts in

general is applicable to them, though the company denominates itself a benefit association. Speaking of these associations, Mr. May says: "Their certificates of membership often resemble, both in form and substance, ordinary policies of life insurance; and the courts have with great uniformity treated them as substantially life insurance companies, applying to them, and to the virtual relatives of the members, the rules and principles applicable to the contract of life insurance." 2 May on Insurance [2 Ed.], sec. 550a.

According to the better authority, an ordinary contract of life insurance is an entire insurance for life, subject to forfeiture for nonpayment of any premium. *Ins. Co. v. Statham*, 93 U. S. 24; *Ins. Co. v. Smith*, 44 Ohio St. 156. In ordinary life policies requiring payment of premiums at stated times, and providing for a forfeiture in case of nonpayment of any premium, it is optional with the insured whether he will pay or not. Such contracts are unilateral, and the insured can pay or forfeit all that he has paid, as he may elect. The premiums do not constitute an indebtedness against him in favor of the insurer. *Worthington v. Ins. Co.*, 41 Conn. 379; *Goodwin v. Ins. Co.*, 73 N. Y. 485. "The payment of the premium is optional with the insured, and if he make default, the insurer has no other remedy than the avoidance of the policy. If the policy be voidable only at the option of the insurer, it may be different." 2 May on Ins. [3 Ed.], sec. 341a.

The same principle applies to certificates issued by mutual benefit societies. *In re Ins. Co.*, 9 Bissell, 188; Niblack on Mut. Benefit Societies, sec. 276. The law on this subject is correctly stated in Bacon on Benefit Societies and Life Insurance, at section 357, where it is said: "In a contract of life insurance there is generally no absolute undertaking of the insured to pay the premiums, or assessments, and consequently

no personal liability therefor. The payment of the premium, or assessments, is only a condition precedent of the liability of the company; the insured does not promise to pay the premiums, and the company only promises to pay if it has received the agreed consideration. Therefore, the insured may pay or not, as he pleases; he has the perfect right to do either, and need give no excuse for his choice. If he does not pay, the contract is ended. It follows, therefore, that the premium, or assessment, is only a debt when there is an absolute promise to pay embodied in the contract.''

Now, if we turn to the certificates issued to the defendant, it will be seen there is no obligation imposed upon him to pay the assessments. Payment of the assessments within the designated time after notice is simply a condition to the continuation of the insurance. The condition written in the contract is, that if the said Chas. E. Barney fail to pay any assessment when due and payable, ''then this contract and agreement shall be null and void, and of no effect, and the said Charles E. Barney and the beneficiary therein shall forfeit all rights accruing under this certificate.'' Void as to whom? Not as to Barney alone, but as to the insurer and the insured. Such is the plain language of the contract. That this is the legal effect of the contract as expressed in the certificates themselves seems clear to the writer.

But stress is laid upon the amended by-laws, which change the amount of the assessment for each loss from $1.60 to $6.40, and the amount to be paid on each certificate to the fixed sum of $2,000. We can not see that these changes affect the question in hand in the least. If the assessments are to be regarded as an indebtedness from the defendant to the association, it is because of the second amended by-law, which provides that upon the death of a member each living

member may be assessed, and shall pay to the association a fixed sum according to the class of which the assessed was a member. This by-law must be taken in connection with the third, which provides that any member failing to pay the assessment within the designated time shall forfeit his membership in the association and all benefits therefrom. These by-laws point out what the association and its officers are to do upon the death of a member. They prescribe the procedure to be pursued, and that is their object and purpose. They are to be taken together and in connection with the certificates. When this is done, they do not change the terms of the contract from that expressed in the certificate so far as concerns the liability of the insured to pay the assessments. It is still optional with the insured whether he will pay or suffer a forfeiture.

This case is wholly unlike those cases where mutual insurance companies insure property against loss or destruction, and in consideration therefor receive the note or notes of the insured, the policy containing a provision that it is to be void in case of a failure of the insured to pay the note or notes at maturity or in case of a failure to pay any assessments made thereon. In many cases of that character it is held that neither the insolvency of the company nor the cancellation of the policy deprives the company of the right to make and collect assessments to pay losses which accrued while the policy was in force. In such cases the policy and the notes are but parts of one transaction, and taken together constitute mutual agreements to be performed by each party. It is manifest that such cases have no bearing on the question now in hand.

In the case of *Life Association v. Rossiter*, 132 Pa. St. 314, the assignee of the company sued the defendant to recover certain assessments levied upon a life

policy. The case shows that the defendant signed an application in which it was stated: "The members and beneficiary shall be jointly and severally liable for all death claims accruing during life of membership, which shall become due within thirty days after mailing a notice showing a statement of the death," etc. The policy lapsed by reason of nonpayment of an assessment, and the insured ceased to be a member. The defendant was held liable for assessments levied to pay death losses which accrued while he was a member, and he was held liable for the reason that such was the plain terms of his express agreement. As to the case of *McDonald v. Ross-Lewin*, 29 Hun, 88, it is sufficient to state that the defendant there also signed an application for membership in which he in terms promised and agreed to accept the certificates and pay therefor as provided by the by-laws and regulations of the society.

The two cases last cited are much relied upon by the plaintiff, but they are unlike this one; for, while the certificates. issued to this defendant recite the fact that he made representations in an application for membership, still the applications are not in evidence, and there is nothing in the recitals from which it can be inferred that he agreed to be personally liable for any assessment. The certificates issued to the defendant and the by-laws taken together show, and they only show, that the company agreed in each case to pay the children of the defendant at his death the sum of $2,000, provided he made payment for each assessment within the designated time after notice; and a failure to pay any assessment is, by the terms of the contract, made to operate as a forfeiture of all that has been paid. The contracts are unilateral and, in respect of the liability of the insured to pay and thereby keep them in force and effect, do not differ from an ordinary life policy requir-

ing the payment of premiums at stated times. The payment of all assessments up to a given date continued the insurance until the expiration of twenty days after date of a notice of another assessment, and it was entirely optional with the defendant whether he would pay the further assessment or suffer a forfeiture. It follows that the defendant was not liable to the company in a suit by it to recover the assessments, nor is he liable to the plaintiff. BRACE and BURGESS, JJ., concur.