GIBSON v. MEGREW ET AL.

[No. 18,911.   Filed March 6, 1900.]

INSURANCE.—*Collection of Assessments.—Beneficial Associations.*—Assessments against members of a beneficial association for the benefit of a beneficiary of a deceased member cannot be enforced by suit, where the only penalty provided in the contract for non-payment was the forfeiture of the defaulting member's certificate and all benefits thereunder.

From the Marion Circuit Court.   *Affirmed.*

*O. H. Carson* and *J. C. Moore*, for appellant.

*S. N. Chambers, S. O. Pickens* and *C. W. Moores*, for appellees.

JORDAN, J.—Appellant, Eliza Gibson, petitioned the Marion Circuit Court, in behalf of herself and others, to order appellees, as the assignees or trustees of the Masonic Mutual Benefit Society of the State of Indiana, to levy and collect assessments from all persons who had been members thereof within the past six years. The demand of the petitioner was that such an assessment, under the order of the court wherein such trust was pending, be made by the appellees as would create a sum sufficient to pay all death losses remaining unpaid, together with accrued interest thereon, and all costs of collecting such assessments, etc. A demurrer was sustained to the petition, and judgment was rendered against appellant for cost. The only error assigned is predicated upon this ruling and judgment.

The petition discloses substantially the following facts: Appellant is the beneficiary under a certificate or policy of insurance, numbered 12,009 in class four, issued by the said Masonic Mutual Benefit Society on the life of her husband, James H. Gibson, bearing date of July 15, 1887, whereby the said society agreed, in consideration of the representations made in the application for membership, and the sum of $6 in hand paid, and the further sum of $1.80, to be paid

to the secretary of the society by James H. Gibson, upon
due notice to him of the death of a member, to pay to
appellant, upon the death of her said husband, after satis-
factory evidence of his death had been furnished, the sum of
seventy cents for every member of the first class, seventy-
five cents for every member of the second class, ninety-five
cents for every member of the third class, and the sum of
$1.60 for every member of the fourth class, belonging to
the society at the time of the death of said James H. Gibson;
provided that the aggregate amount of benefits payable
under such policy or certificate should not exceed the sum
of $2,500. It is alleged that said James H. Gibson, while a
member of said company, performed all and singular the
agreements and promises made by him in his application
for insurance, and has complied with all of the terms and
conditions contained in his said certificate, and has complied
with all the provisions of the society's constitution and by-
laws. It further appears that said Gibson, while a member
of the society, and in good standing therein, died on June
24, 1897, previous to the assignment of the society, as here-
inafter mentioned. Upon his death it is averred that
appellant became entitled, upon the conditions contained in
said certificate of insurance, to receive the benefits therein
named to the full amount of $2,500; which claim was, on
the —— day of September, 1897, approved by the said
society's board of directors, and a partial payment to the
amount of $100 was made to appellant, leaving the remain-
der of her said claim still due and unpaid. On January
——, 1898, the society, being insolvent, made an assign-
ment, under the assignment laws of this State, to appellees
for the benefit of all of its creditors. It further appears that
the Masonic Mutual Benefit Society of Indiana was organ-
ized at the city of Indianapolis, Marion county, Indiana, on
August 5, 1869, and the articles of association, under which
it was organized, were recorded in the recorder's office of
Marion county, Indiana. The object of the association, as

declared in these articles, was to give financial aid and bene-
fit to the widows, orphans, and dependents of deceased mem-
bers.   The names and residences of the incorporating mem-
bers, together with a description of the seal, are all given or
stated in said articles.   In addition to the articles of associa-
tion, the constitution and by-laws, etc., adopted by the
society are also set out and made a part of the petition.

   This appeal may be said to present two questions:   (1) Is
there, under the terms and provisions entering into the con-
tract or policy of insurance issued by the society to a member,
an absolute undertaking upon his part to pay the stipulated
assessments or premiums as will render him personally liable
to the company for such payment, and which the latter can
enforce by an action?   (2) In the event that such a liability
exists, did the right to make an assessment and enforce it, as
demanded by appellant, pass to appellees in and by virtue
of the assignment made by said society?

   The obligation imposed upon a holder of a certificate of
insurance in this society must be determined by an interpre-
tation of its own terms and provisions, regard being had,
however, to the law under which the society was created, and
to the terms and provisions of its constitution and by-laws,
which may have any bearing thereon.

   The petition refers the incorporation of the society in
question to an act of the legislature of this State approved
September 20, 1865, which act authorizes the organization
of mutual life insurance companies.   This statute appears to
be supplemental to one approved June 17, 1852, which pro-
vided for the organization of mutual fire insurance com-
panies.   The supplemental act authorized the creation of
mutual life and accident companies under the same condi-
tions and subject to the same duties and liabilities, so far
as applicable, as were provided by the fire insurance statute
to which it was supplemental.   See §§4876 to 4895, inclu-
sive, Burns 1894, §§3745 to 3763 R. S. 1881 and Horner
1897.

Appellant's counsel insist that this society was incorporated under the authority of §4895, *supra.* The terms and provisions of its articles of association, and the method employed for its incorporation, and the provisions of its constitution and by-laws clearly demonstrate, we think, that counsel in their insistence are mistaken. That its organization was not, neither was it intended to be, founded upon these statutes, we think is evident. The very terms and provisions of its articles of association, and the recording thereof, respond to the requirements of the statute concerning voluntary associations, and there can be no doubt, we think, but what it was intended to be organized in compliance with the provisions of that statute. Davis' Revision, 1876, p. 923, §4583 Burns 1894. Section 4583 of this statute authorizes the adoption of rules and regulations by associations organized thereunder, for the government of their officers and members; but, aside from this, there is nothing in the statute to enlighten us in the decision of the question involved in this appeal.

Each applicant for membership was required to subscribe to a written application, wherein, among other things, he agreed to abide by the constitution and by-laws of the association, and any amendments thereafter made, and further agreed therein to accept and abide by whatever rules, regulations, and modifications which might be adopted or made by the board of directors, regulating or governing assessments or the payment of mortuary claims, in accordance with the provisions of the constitution and by-laws of the society. It was further agreed and stipulated in the application that any certificate issued thereon should be upon the following express conditions and agreements: "First. That this contract shall be void if the party to whom it is issued shall die in consequence of a duel. * * * Second. If the insured shall die by his own hand or act. * * * Third. No agent of the society is authorized to make, alter or discharge contracts or waive forfeitures.

Fourth. By his acceptance of the certificate to be issued hereon, said member expressly consents that any and all physicians shall testify fully as witnesses touching any matter confided to them. * * * Whenever a certificate, held by a member who has paid all assessments in full, shall become a claim by death, after having been in force three full years, the society shall not contest its payment on account of the incorrectness of any statement in the application. * * * Fifth. Should the board of directors reject any claim, no suit thereunder shall be sustained in any court unless the same be commenced within one year after such rejection. * * * Sixth. The said member, by his acceptance of said certificate agrees, that, in case of his death, any unpaid balance due from him to the reserve fund, or from the assessments, or otherwise, as provided by the constitution of the society, shall be deducted from any payment made thereunder; but nothing herein contained shall be held to constitute a waiver of the forfeiture for non-payment of assessments, as provided in said constitution or by-laws."

The certificate or policy of insurance issued by the society to an applicant, upon the acceptance of his application, in part is as follows: "This certificate of membership witnesseth, that the Masonic Mutual Benefit Society of Indiana, in consideration of the representations made to it in the application for membership, which, by reference, is made a part hereof, and the sum of $6 to it in hand paid, and the further sum of —— dollars, to be paid to the secretary of the society by the said————, upon due notice to him of the death of a member of the society, as provided in the by-laws of the society, such payment to be made on or before the last day of the month in which such notice is issued, or sent to him, the society does promise and agree with the said ———— (insured), his heirs, executors, administrators, and assigns, well and truly to pay to ———— (beneficiary) or, in case of the previous death of the person or persons to whom this certificate is made payable, within ninety days

after satisfactory evidence of the death of the said————
(insured) has been presented to and approved by the board
of directors of said society, the sum of seventy cents for
every member of the first class, the sum of seventy-five cents
for every member of the second class, the sum of ninety-five
cents for every member of the third class, and the sum of
$1.60 for every member of the fourth class, belonging to
the society at the time of the death of the said ————
(insured); provided, the aggregate amount of benefits pay-
able under this certificate shall not exceed the sum of $2,500.
This certificate is issued and contract made upon the follow-
ing express conditions and agreements: First. If the said
———— (insured) shall be expelled from any masonic
lodge or other masonic body, such expulsion shall work
expulsion from this society, or in case he shall, without the
consent of the president and secretary of the society, pre-
viously obtained in writing, engage in any military or naval
service whatever, in time of war or rebellion, or in case he
shall die by his own hand, or by the hands of justice, or in
violation of the laws of any country where he may reside,
or by or from the effects of intemperate habits, or from
'delirium tremens' induced by intemperate habits, then,
or in either case, this certificate shall be null and void. Sec-
ond. No agent of this society shall have power to waive or
alter any conditions or terms expressed in this certificate of
membership, or to give any receipt for money that shall bind
the society, except as herein provided. Third. By his accept-
ance of this certificate, the said ———— (insured) expressly
consents that any and all physicians shall testify fully as wit-
nesses touching any matters confided to them by him at any
time material to the rights of the parties under this certifi-
cate, and that upon the discovery of any untruth or decep-
tion in his application for membership by him made, the
society may cancel and annul this certificate. In witness
whereof," etc.

Section one of article six of the constitution adopted by

the society divided the members thereof into seven, classes according to age. Sections two and three of the same article provide as follows: "Section two. When an assessment has been made by the board of directors, it shall be the duty of the secretary to send, or cause to be sent, by mail, to the last known post-office address of each member, a notice containing the amount and date of payment of such assessment; and the notice so sent shall be deemed and taken to be a lawful and sufficient demand for the payment of such assessment. The secretary may authorize the local agent in the city or town where the member resides to act for him in serving such notice, either personally or by mail, which notice so sent or served by such local agent shall be deemed and taken to be a lawful and sufficient notice for the payment of the assessment so called for and required. Section three. A member failing to pay his assessment by the last day of the month in which such notice is sent shall forfeit his certificate of membership, and all benefits thereunder; but a member, after so forfeiting his membership for nonpayment of assessments, may be reinstated by the board of directors within thirty days after such forfeiture, by paying all arrearages, and furnishing a certificate of good health from a medical examiner of the association, subject to the approval of the medical director." Section one of article eight provides: "Upon the death of a member of the society, each member shall be assessed, and shall pay to the secretary of the society a sum according to the class of which he is a member, and the amount of the certificate held by him as follows." Here follows a schedule of assessments to be made upon different amounts of insurance and ages of the insured, the amounts ranging from $500 to $2,500, and the ages from twenty-one years to seventy-five years. This section contains the following proviso: "Provided that the board of directors shall determine the number of assessments to be collected during any one month; and provided, further, that upon the death of a member his certificate shall be charged with and

there shall be deducted therefrom an amount equal to one assessment for each death occurring in the society prior to the death of such member on which payment has been made by such member." Section thirteen of the by-laws reads as follows: "When an assessment has been made by the board of directors it shall be the duty of the secretary to send or cause to be sent, by mail, to the post-office address of each member, a notice containing the amount and date of payment of such assessment. The notice so sent shall be deemed and taken to be a lawful and sufficient demand for the payment of each assessment. The secretary may authorize the local agent in a city or town where the member resides, or any special agent of the society, to act for him in serving notices of assessments, either personally or by mail, which notice so sent or served shall be deemed and taken to be a lawful and sufficient notice for the payment of the assessment so called for and required. Any member failing to pay his assessment by the last day of the month in which such notice is issued shall forfeit his certificate of membership, and all benefits thereunder, but a member after so forfeiting his membership for non-payment of assessments may be reinstated by the board of directors within thirty days after such forfeiture, by paying all arrearages, and furnishing a certificate of good health from a medical examiner of the association, subject to the approval of the medical director."

The certificate of insurance issued by the society to a member recites that it is in consideration of the representations made in the application for membership, and the sum of $6 cash in hand paid, and the further sum of——— dollars to be paid to the secretary of the society by the assured upon due notice to him of the death of a member, as provided in the by-laws of the society, such payment to be made on or before the last day of the month in which the notice is issued or sent. The certificate does not, by its own terms, declare what will be the result of the non-payment

by the insured in the event he fails to pay all subsequent assessments to be made upon the death of a member. It was stipulated, however, in the application, which, by reference, is made a part of the certificate of insurance, that the latter should be issued upon certain enumerated conditions, among which it was provided that, in case of the applicant's death, any unpaid balance due from him to the reserve fund, or from assessments or otherwise, as provided by the constitution of the society, should be deducted from any payment made thereunder. It was declared, however, that nothing therein contained should be held to constitute a waiver of the forfeiture for non-payment of assessments, as provided in the constitution or by-laws.

The law is well settled that when a person enters into an association he must acquaint himself with its constitution and by-laws, as these are considered important factors in testing his rights, duties, and liabilities. *Supreme Lodge* v. *Knight,* 117 Ind. 489, 3 L. R. A. 409; *Supreme Council* v. *Forsinger,* 125 Ind. 52, 9 L. R. A. 501; 3 Am. & Eng. Ency. of Law (2nd ed.) p. 108.

In the application for membership in the case in question, the applicant expressly agrees to abide by the constitution and by-laws of the society as they then exist, or as they may be changed by subsequent amendments. Consequently there can be no question but what the constitution and by-laws enter into and form elements of the contract of insurance issued by the society to a member; and therefore the contract of insurance is to be considered along with the society's constitution and by-laws so far as the latter are pertinent to the question involved. The object in construing a written contract is to ascertain, as far as possible, the intent of the contracting parties. So, in this case, the principal question involved must be solved by an interpretation, under the settled rules of the law, of the intent of the contract as it existed between the society and the insured member in respect to the liability of the latter for the payment of mortuary assessments.

Section two of article six of the constitution, as we have seen, provides for notifying a member of a death assessment when made. Section three provides in terms, in effect, that the failure to pay the assessment within the time therein stated shall result in the forfeiture of the defaulting member's certificate, and of all benefits thereunder, except the right of reinstatement is reserved, subject to the conditions provided. Section thirteen of the by-laws combines the provisions embraced in the above mentioned sections of the constitution. These provisions of the constitution and by-laws, as previously stated, must be considered as elements which enter into and form a part of the contract of insurance. They are virtually all of the provisions of the constitution and by-laws which can be said to have any bearing upon what the society and its insured member, under the contract, contemplated in regard to the enforcement of the payment of subsequent assessments which were to be levied upon the death of a member. We discover nothing, either in the application, certificate issued thereon, or the constitution or by-laws, which can be construed or interpreted as an absolute promise, upon the part of the assured, to pay these assessments, or which can be said to create the relation of creditor and debtor between a member and the society in respect to such assessments.

The parties to the contract of insurance were apparently content to provide only in regard to future assessments that, after notice thereof, the failure to pay any such assessment within the stipulated time should *ipso facto* terminate the contract of insurance, and result as a forfeiture of all rights, money paid, and benefits thereunder, except the reserved right to reinstatement. That this should be the inevitable result of a non-payment of an assessment was no doubt deemed to be the most efficient means of coercing or inducing the payment upon the part of the members of the assessments levied. That this result must follow the non-payment

of assessments, under the plain provisions of the constitution and by-laws, is certainly not a debatable proposition. The question of forfeiture, under the circumstances, was not a matter merely within the option of the society, but necessarily followed from the force and effect of the constitution and by-laws. These were as binding and controlling upon the officers of the association as they were upon its members.

We have seen that the act concerning voluntary associations, under which the society in question was organized, is silent in regard to the payment of assessments or withdrawal of members of such association, and hence this statute can cast no light upon the interpretation of the contract, as it apparently has left the whole matter to be controlled by the constitution and by-laws of the association.

It can not in reason be asserted that there is anything in the provisions of the society's constitution or by-laws, or the application or certificate in question, which can be construed into an agreement upon the part of the assured that, after the forfeiture of all of his rights and benefits has taken place, he would continue as a member of the society for the payment alone of assessments, and that the latter might be enforced against him by suit after all of his rights and benefits, under the contract, had been terminated and destroyed. The assessments provided for were made to pay the losses occasioned by the death of a member, and, when collected through the agency of the society, the money did not belong to it, but went into a fund to pay the beneficiaries of the deceased member or members.

While it is true that the society in controversy was a mutual benefit society, the object of which was to give financial aid and benefit to the widows, orphans, and dependents of a deceased member, still that fact does not render it any the less a life insurance association, operating under the assessment plan it adopted. Courts have, as a general rule, treated such societies as life insurance companies, applying to them, and the policies which they issue, the principles

pertinent to the contracts of life insurance. 2 May on Ins. (3rd ed.) §550a.

The contract of an ordinary life insurance company, under its contract of insurance wherein the assured is required to pay, at the time stated, the premium as provided, and wherein it is also provided that a forfeiture of the contract shall result in the event of the non-payment of such premium, is considered, in a legal sense, to be a unilateral contract. The premium or assessment to be paid, in order to continue the risk, under such circumstances, is held not to constitute an indebtedness against the insured in favor of the company. The payment of such premium or assessment is considered as a condition precedent, upon the performance of which the company, under its contract, continues to carry the risk as originally assumed. As a general rule, under such contracts, in the absence of anything to the contrary, the insured has the right to elect whether he will continue to pay his premiums or assessments, as they become due, or forfeit the contract. He must make his election after notice of the assessment within the time fixed for the payment, or suffer the loss of membership, and thereby terminate his rights and the liability of the company or society under the contract of insurance, save and except, as heretofore stated, the right of reinstatement, when the same is expressly reserved, as in the case at bar, or except any other right which may have been expressly reserved from the effect of the forfeiture. 2 May on Ins., (3rd ed.) §341a; *Rood* v. *Railway, etc., Assn.,* 31 Fed. 62; *Worthington* v. *Charter Oak Ins. Co.,* 41 Conn. 372; *Goodwin* v. *Massachusetts, etc., Ins. Co.,* 73 N. Y. 480.

As a general proposition, this same doctrine applies to mutual benefit societies. The main feature of the plan adopted by such insurance societies is that death losses are to be paid by voluntary contributions upon the part of its surviving members. Accordingly, the society, on the death of a member in good standing, levies an assessment upon

the surviving members in good standing. Such assessment, which is in the nature of the premium exacted in ordinary life companies, when paid by the member within the time provided, serves to continue his policy in full force and effect until it may be forfeited by the non-payment of some subsequent assessment. · That the levy of such assessments, as a general rule, does not serve to make the insured member a debtor to the society, so as to authorize the latter to enforce the payment thereof by suit, is well settled by the authorities. *Lehman* v. *Clark*, 174 Ill. 279, 51 N. E. 222, 43 L. R. A. 648; *Clark* v. *Schromeyer*, 23 Ind. App. 565; *In re Protection Life Ins. Co.*, 9 Biss. 188; 2 Bacon on Ben. Soc., etc., §357; Niblack on Mutual Ben. Soc., §276; *State* v. *Merchants, etc., Soc.*, 72 Mo. 146; *Commonwealth* v. *Wetherbee*, 105 Mass. 149; *Rood* v. *Railway, etc., Assn.*, 31 Fed. 62.

The rule applicable to the question is well and aptly stated by Bacon in his work on benefit societies, *supra.* In §357, the author says: "In a contract of life insurance there is generally no absolute undertaking of the insured to pay the premiums, or assessments, and consequently no personal liability therefor. The payment of the premium, or assessments, is only a condition precedent of the liability of the company; the insured does not promise to pay the premiums and the company only promises to pay if it has received the agreed consideration. Therefore the insured may pay or not as he pleases, he has the perfect right to do either and need give no excuse for his choice. If he does not pay, the contract is ended. It follows, therefore, that the premium, or assessment, is only a debt when there is an absolute promise to pay embodied in the contract. Whether or not such absolute promise to pay is embodied in the contract is a question of construction."

We have examined *Ellerbe* v. *Barney*, 119 Mo. 632, 25 S. W. 384, 23 L. R. A. 435, *New Era Life Assn.* v. *Rossiter*, 132 Pa. St. 314, 19 Atl. 140, *Dettra* v. *Kestner*, 147 Pa. St. 566, 23 Atl. 889, *Rundle* v. *Kennan*, 79 Wis. 492,

48 N. W. 516, *Fulton* v. *Stevens*, 99 Wis. 307, 74 N. W. 803, *McDonald* v. *Ross-Lewin*, 29 Hun 87, and other cases which it is claimed support appellant's contention, but these, with the exception of *Ellerbe* v. *Barney, supra*, are, under the facts, distinguishable from the case at bar, and do not sustain appellant's view. The distinguishing feature, in the main, in the above cases, is that the contracts therein involved contain a promise upon the part of the assured to pay the assessments. No such element can be said to enter into the contract under consideration.

It is true that the holding in *Ellerbe* v. *Barney, supra*, fairly supports the insistence of appellant. The action in that case was instituted by the receiver of the Masonic Mutual Benefit Society, of Missouri, which association had been operated as a life insurance company under the assessment plan. The controversy was as to whether the insurance policies issued by it to its members contained a promise on the part of the latter to pay the assessments. The majority of the court held that the policy or contract of insurance issued by the society must be so construed, and that the assessments were collectible by suit. Chief Justice Black and Justices Brace and Burgess dissented. The dissenting opinion prepared by the Chief Justice is, in our judgment, more convincing in its reasoning, and is better fortified by authorities than is the majority opinion.

It may perhaps be said that an irreconcilable conflict exists between the holding in *Lehman* v. *Clark*, 174 Ill. 279, 51 N. E. 222, 43 L. R. A. 648, and *Ellerbe* v. *Barney, supra*. The court in the latter case, however, seems, in our opinion, to have made the mistake of considering that the death assessments levied by the society were in the nature or character of society dues, and therefore a member could not escape the payment thereof by terminating his membership. That the assessments, under the provisions of the contract in this case, can not be so viewed or considered is a proposition too plain to be controverted.

In *Lehman* v. *Clark, supra,* the receiver of the Masonic Benevolent Association of Central Illinois sued to recover of its members assessments in order to pay death losses which had accrued while the association was a going concern. The society in that case, and also the facts and questions involved, may be said to be substantially identical with the particular association and questions involved in this appeal. It was held in a well considered opinion in that case that an insurance contract in a benevolent association, wherein a provision is made for a forfeiture of all payments and benefits by reason of the non-payment of assessments within the time stated therein, is unilateral in its obligation, and that the right or remedy of the association, upon the default of a member in paying his assessments, is to declare a forfeiture, and that its right to sue and recover the assessment could not be maintained by it nor by its receiver. This decision was followed by our own Appellate Court in the appeal of *Clark* v. *Schromeyer,* 23 Ind. App. 565.

To reiterate what we have previously stated, it is evident, we think, that when the policy or contract of insurance involved in this case is considered along with the society's articles of association, its constitution and by-laws, and the application for membership, there is nothing which can in reason be interpreted as an agreement or obligation, upon the part of its insured members, to pay the mortuary assessments, such as would thereby constitute them debtors of the society, and hence authorize it to enforce the payment of the assessments by suit. If the contracts involved herein could be said to be doubtful in respect to the interpretation of the question presented thereunder, and thereby be open to the application of the doctrine of practical construction, it is possible that the acts of the society's governing officers, in the administration of its affairs for a period of almost thirty years, might disclose that it, through its officers, had placed a construction upon the question in issue in this case wholly incompatible with the construction or interpretation for

which appellant now contends. As the society, under the contracts in dispute, was not authorized to sue and thereby recover of its members unpaid assessments, certainly it can not be claimed that the appellees, who are but its assignees, are invested with any greater rights than it was in respect to enforcing by suit the payment of the assessments in controversy. It follows, therefore, and we so conclude, that appellant, under her petition, is not entitled to any relief, and the demurrer thereto was properly sustained.

The judgment is affirmed.