LEWIS L. LEHMAN

v.

JAMES H. CLARK, Receiver.

*Opinion filed June 23, 1898—Rehearing denied October 6, 1898.*

1. INSURANCE—*the acts of June 22, 1893, created distinct classes of insurance corporations.* The two acts approved June 22, 1893, (Laws of 1893, pp. 117, 130,) were designed to create distinct classes of corporations furnishing life insurance or indemnity under various former acts, and to constitute a complete code for each. (*Bastian* v. *Modern Woodmen*, 166 Ill. 595, followed.)

2. ASSESSMENT COMPANIES—*Masonic Benevolent Association of Central Illinois is an assessment company.* The business of the Masonic Benevolent Association of Central Illinois is that of life insurance, so far as it pertains to issuing insurance certificates and paying death benefits, and the association is governed by the act of June 22, 1893, (Laws of 1893, p. 117,) entitled "An act to incorporate companies to do the business of life or accident insurance on the assessment plan," etc.

3. SAME—*when contract of insurance in assessment company is unilateral.* An insurance contract in a benevolent association, wherein provision is made for forfeiture of all payments and benefits by a member upon failure to pay his assessments at a certain time, is unilateral in its obligation, and the right of the association upon a member's failure to pay an assessment is to declare a forfeiture, and not to sue for the assessments.

4. SAME—*what constitutes the contract of insurance.* The constitution and by-laws of an assessment company, the application for membership and the certificate of insurance together constitute the contract of insurance, which is purely unilateral, in the absence of a promise by the member to be bound for unpaid assessments.

5. SAME—*when provision for forfeiture of insurance is self-executing.* Where a contract of insurance in an assessment company provides that upon the member's neglect or failure to pay any dues or asessments at a certain time the insurance certificate shall become null and void and all benefits received and payments made thereunder be forfeited, the forfeiture provision is self-executing, and upon his failure to pay within the specified time the insured at once ceases to be a member.

6. SAME—*levying an assessment does not create relation of debtor and creditor.* Levying an assessment on an insurance certificate in an assessment company does not, where the contract is unilateral, create the relation of debtor and creditor between the company and the assessed member, and upon the member's failure to pay the as-

174  279
77a 601
174  279
84a 315
174  279
86a 322

174  279
188  8437
174  279
101a 5214
174  279
102a 5281
174  279
d200 5361
174  279
e104a 54( 6
174  279
d106a 7613

sessment when due, neither the company nor its receiver can enforce payment by suit.

7. SAME—*liability for assessment for death while party was a member.* Where the admission fee in an assessment company pays the member's insurance in advance up to the maturity of the first assessment, his payment of that assessment settles in advance for his insurance up to the maturity of the second assessment, and so on, so that when he ceases to pay, which, under his contract, immediately forfeits all his rights, he has paid for all the insurance received and is not liable for a death benefit, although such death occurred before he ceased to be a member.

*Lehman* v. *Clark,* 71 Ill. App. 366, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

HENLEY & HENLEY, and J. W. & E. C. CRAIG, for appellant.

ANDREWS & VAUSE, and J. F. HUGHES, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Appellee brought this suit as receiver of the Masonic Benevolent Association of Central Illinois, to recover the amount of assessment made by him as such receiver, under an order of the court, against appellant, a member of the association, to cover death losses accrued while the association was doing business. The general issue was pleaded, together with the stipulation that all defenses might be made under that plea. On trial a verdict was rendered for the plaintiff, and damages assessed at $158.40. A motion for new trial was overruled, and a *remittitur* of $19.80 being entered, judgment was rendered for $138.60 and costs. The Appellate Court for the Third District affirmed that judgment and made a certificate of importance, under which the case is brought to this court.

The Masonic Benevolent Association, of which appellee is receiver, was organized under an act concerning corporations, approved April 18, 1872. The amendments to that act, approved March 28, 1874, May 22, 1883, and June 4, 1889, are to be considered in the discussion of the question here presented, together with an act approved June 22, 1893, under which the bill in this case was filed and the receiver appointed.

It was held in *Bastian* v. *Modern Woodmen*, 166 Ill. 595, that the two acts approved June 22, 1893, were designed to create certain classes of corporations furnishing life insurance or indemnity under various former acts, and to enact and create a complete code for each. The Masonic Benevolent Association, of which appellee is receiver, belongs to a class governed by one of the acts of June 22, 1893, which was entitled "An act to incorporate companies to do the business of life or accident insurance on the assessment plan, and to control such companies of this State and other States doing business in this State, and to repeal a certain act therein named, and providing and fixing the punishment for violation of the provisions thereof." This act was a revision of the subjects mentioned in its title, and provided by section 7 that such an association as the one for which appellee was receiver, was declared to be engaged in the business of life insurance upon the assessment plan, and subject to the provisions of that act. The act further provided for re-incorporation under it of corporations theretofore existing; but this was not made obligatory, and if a corporation did not re-incorporate it could continue to exercise such existing powers and privileges as were not inconsistent with the act, but such corporations were to be governed by the provisions of the act. Sections 18 and 19 authorize the Attorney General to file a bill when any incorporated organization under the laws of this State doing business in this State, of the character prescribed in the act, should be insolvent and so reported by the

Auditor, upon which the court may dissolve the corporation, appoint a receiver, etc.

The question presented by this bill is as to the authority of the court to order an assessment of the members to pay liabilities and the right of the receiver to recover. The liability of appellant with the association of which appellee is receiver is to be decided by determining whether his contract of life insurance is a unilateral contract or not.

The contracts for life insurance are almost universally held to be unilateral in their character, unless clearly expressed otherwise. The business transacted by the Masonic Benevolent Association of Central Illinois was a life insurance business so far as it pertains to the issuing of beneficiary certificates payable upon the death of the holders, or collection of mortuary assessments and the payment of death benefits. In May on Insurance (sec. 550) it is stated: "There are certain organizations prevalent in this country and elsewhere, under the name of relief, benefit or benevolent societies, or some similar name, which generally have for their object aid to their members, or their widows and children after the decease of their respective members. These associations, though not speculative and not based upon capital paid in as an investment, have nevertheless a general purpose of mutual protection. * * * Their certificates often resemble, both in form and substance, ordinary policies of life insurance, and the courts have with great uniformity treated them as substantially life insurance companies, applying to them, and to the virtual relatives of the members, the rules and principles applicable to the contract of life insurance."

In *Commonwealth* v. *Wetherbee,* 105 Mass. 161, it is said: "This is not the less a contract of mutual insurance upon the life of the assured because the amount to be paid by the corporation is not a gross sum, but a sum graduated by the number of members holding similar contracts; nor

because a portion of the premiums is to be paid upon the uncertain periods of the deaths of such members; nor because, in case of non-payment of assessments by any member, the contract provides no means of enforcing payment thereof."

In *Railway Conductors' Benefit Ass.* v. *Robinson*, 147 Ill. 138, it was held that a mutual benefit association is a life insurance company for all purposes, except that it is relieved from certain conditions and rules provided by the statute in the act of March 26, 1869. In that opinion it is said (p. 151): "The object and purpose for which the defendant was incorporated * * * was to furnish pecuniary aid to the widows, heirs, devisees and representatives of deceased members of the association, and * * * on proof of such death the association should assess and collect from each surviving member the sum of $2.50 for the benefit of the heirs or devisees of the deceased member, the same to be paid to him or them, to the amount of not exceeding $2500, within thirty days after the collection of the assessment. There can be no doubt, we think, that the benefits provided for by the constitution and by-laws of the association are in the nature of life insurance, and that the contract between the association and the member, evidenced by the constitution, by-laws and membership certificate, is, in substance, a policy of insurance upon the life of the member."

In *Rockhold* v. *Canton Masonic Benevolent Society*, 129 Ill. 440, it was said (p. 457): "That the undertaking evidenced by this certificate is one of insurance * * * cannot be seriously questioned. It is an undertaking by a society, in view of the ascertained age and condition of health of one of its members, in consideration of a present payment of a sum of money and of the undertaking to pay other contingent sums in the future by him, to pay a sum to him, or to his widow or heirs, etc., contingent as to time, upon the duration of his life; and it has been held that the undertaking is not the less a contract of

insurance because the amount to be paid by the corporation is not a gross sum, but a sum graduated by the number of members holding similar contracts, nor because a portion of the premium is to be paid upon the uncertain periods of the deaths of such members, nor because, in case of non-payment of assessments by members, the contract provides no means of enforcing payment thereof."

It is stated in Bacon on Benefit Societies and Life Insurance (sec. 357): "In a contract of life insurance there is generally no absolute undertaking of the insured to pay the premiums or assessments, and consequently no personal liability therefor."

In *People ex rel.* v. *Golden Rule,* 114 Ill. 34, it was said (p. 45): "Although the payment of dues to a corporation on account of  *  *  *  assessments upon its members may be purely voluntary, persons may acquire legal rights to share in them when they are paid.  Through forfeiture of benefits  *  *  *  payments of  *  *  *  assessments may be almost, if not quite, as effectually enforced as by legal process."

In *Chicago Mutual Life Indemnity Ass.* v. *Hunt,* 127 Ill. 257, it was said (p. 277): "The contention is, that the certificate of membership is a personal contract between the member and the association, and that as an infant is capable of making only a voidable contract, his admission to membership is a violation of those principles of mutuality which lie at the basis of mutual benefit societies.   We may admit, in the broadest sense, that these societies are founded upon the principle of entire mutuality in relation to burdens as well as benefits, yet we are unable to see how that principle places the membership of infants upon any footing different from that of adults.   While the certificate of membership is a contract, such contract, in the absence of express stipulations to the contrary, is purely unilateral.   It may be enforced against the association where the member has performed all the prescribed conditions, but none of its

stipulations are enforcible against the member. If he fails to pay his assessments  *  *  *  the certificate becomes void and the membership ceases.  *  *  *  The making of an assessment  *  *  *  does not make the member a debtor to the association, so as to authorize it to bring a suit for its recovery in case of his neglect or refusal to pay. Payment is left wholly to his discretion."

Under these authorities a contract for insurance in any benevolent association is a unilateral contract, and by the association provision is made that for a failure to pay the assessments made on a member who holds a certificate, all benefits he may have under and by virtue of such certificate, and all payments theretofore made, are forfeited. Such is the rule with reference to insurance under almost all circumstances. If any other rule should exist than that the contract is purely unilateral, then, in effect, a partnership would be formed by which every person insured would become liable to all others insured, and the benefits derived from life insurance would be rendered so doubtful and uncertain, and so prejudicial to those seeking insurance, that their individual interests would require them to abstain from taking out a policy or a certificate of membership. If by taking out a certificate of membership or a policy they create a continuous liability against themselves which might be enforced by the company or association, or by the court through its receiver, then few men would avail themselves of the benefits of a policy or certificate of membership which would create a liability they could not throw off at pleasure, but that would make them indefinitely liable for assessments or premiums. The whole scheme of insurance is based on a contract purely unilateral, and whether the payment for insurance be termed a premium or an assessment, the right of the association or company is to declare a forfeiture for non-payment of premium or assessment, and not a right to recover the assessment or premium in a suit.

Section 1 of article 5 of the by-laws of the association of which appellee is receiver provides: "The board of directors shall furnish each member of the association with a certificate of membership, * * * which shall contain the agreement on the part of the association and the member." The certificate of membership provides "that the Masonic Benevolent Association of Central Illinois, in consideration of the representations and warrants made to it in the application for this membership, which is hereby made part," declares the application is a part of the certificate of membership and the basis of the contract. The application for membership declares: "I acknowledge and agree that the above statement shall form the basis of the agreement with the association and constitute a warranty, and I further agree, if accepted as a member of the association, to faithfully abide by all its rules and regulations. Nor shall the association be liable for any benefit thereon until a certificate, duly signed and sealed, shall issue from the principal office of the association, or if any omission or neglect to pay any of the dues or assessments on or before the days on which they shall be due and payable shall take place, or if any fraudulent and untrue answers or misrepresentations have been made, in either event said certificate shall become null and void, and all money which shall have been paid forfeited." This application and the certificate, each referring to the other, must be taken together as constituting the contract, and by the by-laws above quoted the agreement is contained in the certificate of membership and the application. By this application and certificate of membership there is no promise to pay, but a purely unilateral contract is made.

Section 1 of article 3 of the by-laws provides that upon the death of a member the secretary shall send notice by mail of the assessment due from each member, which shall be deemed and taken to be a lawful and sufficient notice for the payment of the assessment called

for, and any member failing to pay such assessment within fifteen days after such notice shall forfeit his membership and all benefits therefrom. The constitution of the association (sec. 1, art. 7,) provides that upon the death of a member of the association each member shall be assessed and shall pay according to the class in which he is a member. This provision of the constitution and these several by-laws, together with the application and certificate of membership, must be held to create the contract of insurance between the association and the member. It is a contract of life insurance.

By article 8 of the constitution it was provided a surplus fund should be raised from admission fees, from that portion of the assessments not used for the payment of benefits, etc., and that the surplus fund should be limited to $40,000, and be held for the following purposes: that benefits may be paid to the heirs of deceased members before assessments are collected from survivors; to insure stability and perpetuity, and make up deficiencies caused by those who fail to pay assessments, and to provide for contingencies that may arise; to pay for medical examinations, printing and other expenses of management. Admission fees were in no way connected with mortuary assessments, except as was provided by that article of the constitution under which benefits were to be paid to the heirs of deceased members before assessments are collected from the survivors, when it became necessary.

When a person became a member of this association by an application and certificate of membership, which were to be considered together with the by-laws and constitution, he became entitled to all the benefits of membership, and by the payment he had then made he paid for his insurance up to the time of the maturity of the next assessment upon the death of a member. The application, certificate of membership and by-laws all provide that upon failure to pay any assessment for a

death benefit within the time specified, the certificate of membership should become void and the member forfeit all benefits in the association and all moneys paid. The provisions of the contract make the forfeiture a part of the contract, and a failure to pay within the time limited causes the forfeiture, and the contract is self-executing in creating the forfeiture. (*Northwestern Traveling Men's Ass.* v. *Schauss*, 148 Ill. 304.) As said in *Chicago Mutual Indemnity Ass.* v. *Hunt, supra:* "The making of the assessment does not make the member a debtor to the association, so as to authorize it to bring a suit for its recovery in case of his neglect or refusal to pay."

· From the principles underlying the whole business of life insurance, whether by what may be termed the old companies or by mutual benefit associations, the unilateral character of the contract is well expressed in the case last cited. The making of an assessment does not make the member a debtor to the association, so as to authorize it to bring a suit for recovery in case of his neglect or refusal to pay, and it would be an anomaly if the law would authorize a proceeding to be had by an officer appointed by a court of equity to have a recovery in favor of and for the benefit of a corporation where the corporation itself could not sue and recover. No principle would authorize such a recovery.

It is insisted that a member who has had the benefit of insurance ought to be required to pay the death benefit of other members who die whilst he thus had the benefit of insurance. The payment of an admission fee is insurance in advance up to the maturity of the first assessment provided for by the constitution and by-laws and by the certificate of membership and the application. If the member paid no more, he simply forfeited all that he had paid and all benefits under his certificate, but had paid for all he had received. By paying the first assessment and continuing to pay assessments thereafter made from time to time, each time he so paid an assessment his as-

sessment was for his insurance until the maturity of the next assessment. Only when he failed to pay an assessment made did he cease to be a member and forfeit all benefits thereunder, and no equitable principle exists which gives a right of recovery against a member who thus elects to no longer pay assessments and who has paid for all he has received in the way of insurance. By ceasing to pay he ceased to be a member, and a forfeiture existed, and he acted in accordance with that contract, having paid for all he received. The provisions of the constitution, by-laws, application and certificate of membership provided for the payment of assessments, and also created the full penalty for the failure to pay such assessments, which is a forfeiture of insurance, of membership, interest in the surplus fund, and all benefits by reason of belonging to the association, together with all moneys paid.

Appellee urges the principle established in the case of *Life Association* v. *Rossiter*, 132 Pa. St. 314. In that case the application contained the agreement that "the members and beneficiaries shall jointly and severally be liable for all death claims." The promise in that case is express and absolute, and constitutes a joint and several promise and undertaking, and cannot be held to constitute, in the application, a provision for a unilateral contract.

Great reliance is had on the authority of *Ellerbe* v. *Barney*, 119 Mo. 632. In that case three of the seven judges dissented. The opinion of the court is based on the position that the contract is not really an insurance contract, and that the assessments ought to be treated, not as premiums, but as lodge dues. In the latter case the Supreme Court of Missouri said: "The unilateral feature contended for in this contract has been very generally imposed upon the contract of the regular, old-line, premium-collecting life insurance companies. These companies were unable to commence business except upon capital paid in by the members or stockholders, to be used in

meeting death losses as they occurred. Until called for, the capital, along with all premiums not wanted for expenses, was required to be invested for profit and accumulations. The premiums were paid annually, and invariably in advance. Upon payment of the first premium, as a condition precedent, the assured received a policy covering him for one year, with the option to continue it by payment of other premiums. This payment constituted the full consideration of value to be paid during the year of insurance. Nothing in the shape of dues or assessments could be exacted from him for the period covered by the premiums paid. If any of the old-line companies should suddenly stop insuring and decline to issue another policy, every policy outstanding would be paid from the accumulated capital as it matured. An inability to do so would put it out of line in the business of insurance, and indicate that it had not been conducted and managed according to the principles upon which it was founded." But in speaking of the certificate in the Masonic Benefit Society of Missouri it was said: "Hence, the certificate of membership in such an organization is a contract with every member of it, to be enforced by the managing officers as representatives or trustees for all the members of the concern. When the member joins he pays the admission fee, which is to defray necessary expenses, but which is altogether too small to constitute a fund or capital wherewith to satisfy death losses. No fund or capital is kept on hand or invested for such a purpose. Indeed, the economy underlying the plan of the organization aims at doing away with the expense and loss incident to management, investment and accumulation of capital. As a substitute therefor, each member promises to contribute an equal share with every other member upon occasion of every death in the membership, which is collected and paid over by the officers of the association to the wife or children of the deceased member, as the case may be. The ascertainment and

declaration of death losses is left to the members of the association, and their action in that behalf is known as an assessment. They are bound to make these assessments on occasion of every death, and the wife or children of the deceased member, or other beneficiary, have the right to compel them to make and collect the assessments inuring to their benefit. It is manifest that these assessments, in their nature, bear a near resemblance to the dues incident to membership in a friendly society, and constitute a consideration for the promised insurance of the association, materially differing from the annual premium stock companies. When considered in the light of society dues, it will be admitted that a person cannot, by discontinuing his membership, escape the obligation of paying those dues which accrued before the termination of his membership."

The contract in that case is in no sense for the assessment and collection of lodge dues. By the provisions of the constitution and by-laws of this association assessments made are not lodge dues, but are assessments for the payment of death benefits. The payment of the premium is optional with the insured, and if he makes default the insurer has no other remedy than a forfeiture of the policy. (2 May on Insurance,—3d ed.—sec. 341a.) The same principle applies to certificates issued by mutual benefit life insurance societies as is applicable to ordinary life insurance companies. *In re Protection Life Ins. Co.* 9 Biss. 188; Niblack on Mutual Benefit Societies, sec. 276; Bacon on Benefit Societies and Life Insurance, sec. 357.

The constitution and by-laws define the duty of the association and its officers, *and provide the mode of obtaining and maintaining membership.* An applicant possessing certain qualifications provided in the constitution and by-laws, upon performance of certain things required therein may become a member, and by doing and refraining from doing certain things required by the constitu-

tion and by-laws he may maintain his membership. If he fails to do any of the things required or does any of the things forbidden he forfeits his membership and all benefits and all interest in all the money he has paid. He agrees, in effect, that so long as he remains a member he will obey all the rules and regulations established for the government of the conduct of members, and the association on its part agrees that the sole and only penalty or liability for failure to obey shall be the forfeitures above mentioned. There is no express, absolute promise to pay or to continue to pay assessments. There is nothing that can be tortured into a direct express undertaking to remain a member and continue to pay as long as one lives. The language deliberately selected by the association in which to express its contract, as appears in the certificate, application and by-laws, makes the forfeiture self-executing, and the member, without any action on the part of the association, by mere force of his failure to pay, *eo instanti* ceases to be a member. This is not like those cases where the association must do something or refrain from doing something to make the forfeiture complete. (*Northwestern Traveling Men's Ass.* v. *Schauss, supra.*) The language of section 1 of article 3 of the by-laws is, "any member failing to pay such assessment within fifteen days after such notice has been served upon him *shall forfeit his membership in the association and all benefits therefrom.*" Under the holdings in the cases above cited the forfeiture is absolutely self-executing.

The reasons why the option is not with the association are apparent. We have no statute in this State concerning withdrawing members or providing for any mode of withdrawing, etc., and no one ever contemplated that every person who joins such an association or society is bound to stay in for life. There is no other provision in the constitution or by-laws of the association, or in the application or in the certificate, or anywhere else, providing for the withdrawal of members. Such contracts

have heretofore always been considered unilateral, and
so the whole plan for withdrawing is embraced in these
self-executing clauses of the by-laws and contract. The
member's failure to pay is his declaration of severance,
and the forfeiture provided for in the by-laws and con-
tract is the association's compensation. The option is
with the member, and not with the association. When
appellant became a member he was required, among other
things, to pay a sum into the mortuary surplus fund.
This sum was two maximum assessments on his $4000
certificate. This money went directly into the fund for
paying death losses,—not a cent of it for dues or ex-
penses. This more than paid his insurance from the date
of his admission to the date of the maturity of his assess-
ment for the first death benefit after he became a mem-
ber. When he had paid the first assessment that paid for
his insurance to the maturity of the second, and so on.
*The requirements for admission, not only in this association but
in all benefit associations or societies, more than cover the mem-
ber's insurance* from the date of his admission to the ma-
turity of the first assessment after he becomes a member.

The statute under which the receiver was appointed
contemplates that if the court shall find that the asso-
ciation cannot longer continue in operation and properly
serve its purpose, then the court shall appoint a receiver
and wind up its affairs, or if the court shall find that
it might longer continue in business and properly serve
its purpose if its officers would do their duty in making
assessments, then the court need not appoint a receiver
and wind up the concern, but may order an additional
assessment to be made to meet deficiencies and allow the
concern to continue in operation. This shows that the
legislature treated these contracts as unilateral. It did
not contemplate the making of an assessment after the
association had been found unable to longer properly
serve its purpose. It is true that, a receiver having been
appointed by the court, the court has power, independ-

ently of any statute, to order him to collect assets; but that power does not change the character of the contract between the association and the member, and make the member a debtor who by his contract is not so. When such association or society for any reason becomes unable longer to properly carry out its purposes some must .lose. All must lose except those that died and were paid before the association became disabled. Those that have died and not been paid should have all there is left and lose the balance. Those who continue to live get nothing and lose all.

But it is said those that continue to live had their insurance all the time. They had just that kind of insurance that those that died had, and no better, and paid just as much for it. Those that have died get the surplus fund and whatever else there is, and those that have lived get nothing. The mistakes or mismanagement which caused the ruin, if the fault of the members at all, was as much the fault of the dead as of the living, and was equally the misfortune of all.

A majority of the court holds that under the provisions of this certificate of membership, taken together with the application and the constitution and by-laws of this association, the contract was purely unilateral, and no recovery could be had thereunder by the association against the member, and for the same reason a recovery could not be had by a receiver appointed by the court to take charge of the assets of the association.

The judgments of the Appellate Court for the Third District and of the circuit court of Coles county are each reversed and the cause is remanded.

*Reversed and remanded.*

Mr. JUSTICE BOGGS took no part in the decision of this case.