## Jonathan H. Rowell v. Covenant Mutual Life Ass'n.

1. CONSTRUCTION OF STATUTES—*Application of Section 20 of the Act to Incorporate Companies to do the Business of Life or Accident Insurance on the Assessment Plan.*—Section 20 of the act to incorporate companies to do the business of life or accident insurance on the assessment plan, and to control such companies of this State and of other States doing business in this State, to repeal a certain act therein named, and providing and fixing the punishment for violation of the provisions thereof, in force July 1, 1893 (Laws 1893, 126), providing that "no order, judgment or decree, for an accounting, or enjoining, restraining or interfering with the prosecution of the business of any domestic insurance corporation subject to the provisions of the act, or appointing a receiver, shall be made or granted otherwise than upon the application of the attorney-general on his own motion, or after his approval of a request in writing therefor by the auditor of public accounts, except in an action by a judgment creditor or in proceedings supplementary to execution, has no application to a suit to prevent a forfeiture of a member's certificate.

2. SPECIFIC PERFORMANCE—*Where Courts of Equity Will Decree It.* —Courts of equity look to the substance of a transaction, and the primary object of the parties, and where that requires a specific performance, decree accordingly, on the ground that a court of law is inadequate to decree a specific performance, and can relieve the injured party only by a compensation in damages, which in many cases would fall far short of the redress which his situation might require.

3. SAME—*Where a Party Refuses to Perform.*—Wherever parties have fairly entered into a valid and binding contract, and one of the parties refuses to perform such contract according to its terms, and such

Rowell v. Covenant Mutual Life Ass'n.

contract, and the situation of the parties are of a nature that the court may decree a specific performance, and there is no adequate and complete remedy at law, a court of equity will interpose and decree a specific performance.

4. SAME—*Mutuality of the Contract.*—It is only where the situation of one of the parties is such under the terms of the contract, or where such situation has changed so that it is impossible for one of them to perform, that the mutuality required by the rule will defeat the relief sought.

5. BENEFICIARY ASSOCIATIONS—*Power to Increase Assessments.*—A beneficiary association, after having issued a certificate for $5,000 on the life of a member, stipulating that no mortuary assessment should ever exceed $1.20, and if the membership should exceed five thousand, or in case of the death of a member holding a certificate for a smaller amount, he should only be liable for such proportional part of an assessment as the amount of his certificate bore to the total membership of the association, can not increase its assessments upon the holder of such certificate and then declare it forfeited because he refuses to pay such increased assessments.

6. SAME—*Not Permitted to Create Estoppels Against Members.*—A beneficiary association can not be permitted to take such advantage of its own wrong as to create an estoppel against one of its members, and the fact that it is acting as the trustee of its policy holders puts it in no different attitude.

7. INSURANCE CONTRACT—*As Choses in Action.*—A contract of insurance is a chose in action, and as such may properly be classified under the general head of personal property, as distinguished from real estate, and the principle governing specific performance relating generally to personal estate applies to all contracts of a personal nature, such as insurance policies, etc.

**Bill to Prevent a Forfeiture of an Insurance Contract.**—Trial in the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Decree dismissing the bill; error by complainant. Heard in this court at the May term, 1899. Reversed and remanded. Opinion filed September 20, 1899.

ROWELL, NEVILLE & LINDLEY, attorneys for plaintiff in error.

A court of equity has jurisdiction to declare assessments illegal when not made in accordance with the policy of insurance, to construe the policy, and to enjoin forfeitures for non-payment of illegal assessments.   Cohen v. N. Y. Mutual Ins. Co., 50 N. Y. 610; Meyer v. Knickerbocker Life Ins. Co., 73 N. Y. 516;   Union Central Life Ins. Co. v. Pottker,

33 Ohio St. 459; Mutual Life Ins. v. Tullidge, 39 Ohio St. 240; Day v. Conn. General Life Ins. Co., 45 Conn. 480; May on Insurance, Sec. 356; Brooklyn Life Ins. Co. v. Weck, 9 Ill. App. 360. See also Covenant Mutual Benefit Association v. Sears et al., 114 Ill. 108; The Mutual Reserve Fund Life Ass'n v. Smith, 169 Ill. 264.

A corporation has no right to pass by-laws which will impair the effect of contracts previously made. Voigt v. Kersten, 164 Ill. 314; Illinois Female College v. Cooper, 25 Ill. 148; Davenport, etc., Co. v. Davenport, 13 Iowa, 229; People v. Crockett, 9 Cal. 112; Pulford v. Fire Dept., 31 Mich. 458; Great Falls Mutual Fire Insurance Co. v. Harvey, 45 N. H. 292; Angell & Ames on Corporations, par. 332; Covenant Mutual Benefit Association v. Baldwin, 49 Ill. App. 203.

Assessments made by the managers of assessment insuance companies in violation of the contract of insurance are invalid, and no valid forfeiture can be declared for a failure to pay such illegal assessment. Farmers' Mut. Fire Ins. Co. v. Knight, 162 Ill. 470; Palmyra Ins. Co. v. Knight, 59 Ill. App. 274; Covenant Mut. Benefit Ass'n v. Baldwin, 49 Ill. App. 203; Northwestern Ben. and Mut. Aid Ass'n v. Wanner, 24 Ill. App. 357; Margesson v. Mass. Ben. Ass'n, 42 N. E. Rep. 1132; Langdon v. Mass. Ben. Ass'n, 44 N. E. Rep. 226; Mutual Endowment Society v. Essender, 59 Md. 463; Hale v. E. Q. Aid Union, 168 Pa. St. 377; Niblack on Mutual Benefit Societies, Secs. 277, 279, 280; Underwood v. Legion of Honor, 66 Iowa, 134.

A contract of insurance between a mutual benefit association and one of its members will be as fully protected as if made with a stranger. The association can not, without the assent of such member, impose any new condition affecting the contract to his injury. It can not by a subsequent by-law change any rights under his control. Northwestern Ben. Mutual Aid Ass'n v. Wanner, 24 App. 357; Middlesex Turnpike Co. v. Swan, 10 Mass. 393; Crossman v. Ass'n, 143 Mass. 435; Morrison v. Wis. O. F., 59 Wis. 162; Becker v. Life Ins. Co., 48 Mich. 610; Becker v. Berlin Benefit Society, 144 Pa. St. 232.

T. A. Moran, Geo. W. Wall, W. C. Calkins and Fifer
& Barry, attorneys for defendant in error, contended
that the complainant has stated no case which entitles
him to relief in a court of equity. Equity has no
jurisdiction under the facts stated in this bill to enjoin
a forfeiture of the contract for the non-payment of
assessments thereunder. Farmers' Mutual Insurance Co. of
Palmyra v. Knight, 162 Ill. 470; Covenant Mutual
Benefit Life Association v. Baldwin, 49 Ill. App. 203;
Margeson v. Mass. Ben. Ass'n, 42 N. E. Rep. 1132; Lang-
don v. Massachusetts Beneficial Life Association, 44 N. E.
Rep. 226; Fry on Specific Performance, Secs. 440, 441;
Ross v. Union Pacific Ry. Co., 4 Woolw. 26; Hetfield v.
Willey, 105 Ill. 289; Frisby v. Ballance, 4 Scam. 287; C.,
B. & Q. R. R. Co. v. Reno, 113 Ill. 39; Kimball v. Tooke,
70 Ill. 553; Harrison v. Polar S. L., 116 Ill. 282.

The bill is insufficient in its allegations to authorize a
court of equity to order an accounting or to interfere with
the control or management of the defendant association by
its directors. Barbots v. Mutual Reserve Fund Life Ass'n,
Supreme Court of Ga., 28 S. E. Rep. 498; Swan v. Mutual
Reserve Fund Life Ass'n, 155 N. Y. 9; Thompson on Cor-
porations, Secs. 4499, 4533; Wheeler et al. v. The Pullman
Iron & Steel Co., 143 Ill. 207.

Mr. Presiding Justice Wright delivered the opinion of
the court.

When this case was before the Supreme Court, 176 Ill.
557, in its statement and opinion in dismissing the appeal,
it said:

" This is an appeal prosecuted from a decree of the Cir-
cuit Qourt of McLean County, dismissing appellant's bill,
filed in that court against appellee.

The material facts alleged in the bill, as a basis for the
relief asked, are as follows: The defendant association
was incorporated January 9, 1877, under the provisions of
the general act concerning corporations, in force July 1,
1872, with the declared object ' to afford financial aid and
assistance to the widows, orphans, heirs or devisees of

deceased members.' The by-laws provided for issuing certificates to members in various amounts, payable at the the death of the member to the beneficiaries. On August 28, 1879, complainant was an active Odd Fellow, of the age of forty-seven years, eligible to membership, and applied therefor, paying for the medical examination and membership fee, and received a certificate of membership, set out in the bill. By this certificate defendant agreed that upon his compliance with its provisions an assessment should be levied, and the association would pay, as a benefit to his children, at his death, $5,000. The conditions to be complied with by him were the payment of the membership and examination fees and assessments for death claims and expenses. The certificate stipulated that a mortuary assessment should never exceed $1.20 on a certificate for $5,000, and if the membership should exceep five thousand, or, in case of the death of a member holding a certificate for a smaller amount, he should only be liable for such proportional part of an assessment as the amount of the certificate bore to the total membership of the association. The by-laws also provided for a membership fee, limited to $10 on a $5,000 certificate, and a medical examination fee of $2, and for assessments to pay death claims, graded according to the amount of the certificate, the age of the member at joining, and the membership of the association. It was provided that such an assessment should never exceed $1.20 for members from the ages of thirty-nine to forty-seven, inclusive, at the time of becoming members. The by-laws also provided for an assessment for expenses which should not exceed thirty cents per month on a certificate of $5,000. All certificates issued up to 1890 were of the same character as complainant's certificate. The defendant has attempted to make a large increase in assessments against complainant, claiming the right to assess him, not in accordance with his contract, but upon the estimated cost of life insurance at his present age, and to assess a larger sum for expenses than called for by his contract. A mortuary assessment (No. 149) was made February 28, 1898, for $37.35, and complainant was notified that six calls of that amount would be made during the year, making in all $224.10 for the year 1898.

There are other matters averred in the bill, but we have stated the substance of the material averments and the grounds upon which relief is asked. The bill charges that these assessments, contrary to the terms of appellant's con-

tract, are in violation of it and in excess of his legal liability. The prayer is, that the mortuary call No. 149, made upon the new plan, be declared illegal and not binding upon complainant; that the court may decree that the only legal assessment which can be made is one in accordance with the terms of complainant's contract, and enjoin the defendant from taking any steps intended to work a forfeiture of the certificate, because of a failure to pay said unlawful assessment or any other like assessment, and also to restrain the defendant from making any assessment upon complainant's certificate, except in accordance with the terms thereof.

The bill was filed to prevent a forfeiture of the certificate, and to enforce a specific performance of complainant's contract made with the defendant, according to its terms. The defendant demurred to the bill and the demurrer was sustained, whereupon complainant elected to stand by his bill, and it was dismissed. The case was brought to this court under the claim that the validity of a statute is involved. The statute in question is section 20 of an act entitled 'An act to incorporate companies to do the business of life or accident insurance on the assessment plan, and to control such companies of this State and of other States doing business in this State, and to repeal a certain act therein named, and providing and fixing the punishment for violation of the provisions thereof,' in force July 1, 1893. The section is as follows:

'No order, judgment or decree providing for an accounting, or enjoining, restraining or interfering with the prosecution of the business of any domestic insurance corporation subject to the provisions of this act, or appointing a temporary or permanent receiver thereof, shall be made or granted otherwise than upon the application of the attorney-general on his own motion, or after the approval of a request in writing therefor by the auditor of public accounts, except in an action by a judgment creditor or in proceedings supplementary to execution.'

Appellant insists, in the first place, that the statute does not apply to a suit of this kind, but he says that in the event the court should hold that it does prohibit his action, then a constitutional question would arise. A reading of the act shows that the action does not purport to have any reference to a suit like this. It refers only to a general accounting, or restraint of the prosecution of the business or system of doing business with the public, in a general way,

by an insurance company, or the appointment of a receiver therefor. There is no averment in the bill that the defendant has been reincorporated under this act; but whatever the fact may be, the act only purports to concern the public regulation, visitation and control of such an association, and not the individual rights of contract. The purpose of this bill is neither an accounting nor any of the other things provided for in the section. If complainant has a contract enforceable according to its terms, an accounting between him and defendant is neither necessary nor proper for the purpose of enforcing it. As the statute has no relation to a suit of this kind, and does not purport to have, there is no question of its validity involved in the litigation. It is not sufficient, to bring a case to this court on a constitutional question, for counsel to assert that in some possible view of the case the validity of a statute may be involved, where it is apparent that it can never come in question."

The points made by counsel for defendant in error, in their brief and argument in this court, by which they seek to support the decree of the Circuit Court dismissing the bill, are (1) that complainant has stated no case which entitles him to relief in a court of equity. Equity has no jurisdiction, under the facts stated in this bill, to enjoin a forfeiture of the contract for the non-payment of assessments thereunder, and (2) the bill is insufficient in its allegations to authorize a court of equity to order an accounting, or to interfere with the control and management of the defendant association by its directors.

The second point above noted is effectually disposed of in the opinion we have quoted, wherein it is said that " the purpose of this bill is neither an accounting nor any of the other things provided for in the section (of the statute). If complainant has a contract enforceable according to its terms, an accounting between him and the defendant is neither necessary or proper for the purpose of enforcing it." We are therefore relieved of the necessity of considering this point.

The only question left, therefore, for the determination of this court, is whether the first point of defendant in

error, stated above, is well grounded.  The purpose of the bill is succinctly stated by the Supreme Court, when it said : " The bill was filed to prevent a forfeiture of the certificate, and to enforce a specific performance of the complainant's contract made with defendant, according to its terms." If it shall be found that a court of equity has power and authority to decree a specific performance of the contract, according to its terms, it will follow, as a necessary incident, that it will interpose to prevent a forfeiture of the certificate for the non-payment of assessments unauthorized by the contract, and we shall first consider whether a court of equity can or will interpose and decree a specific performance of a contract of the nature set forth in the bill, under the circumstances described therein.

It is well known (Story Eq. Jur., Sec. 714, *et seq.*) that by the common law every contract or covenant to sell or transfer a thing, if there is no actual transfer, is treated as a mere personal contract or covenant, and as such, if it is unperformed by the party, no redress can be had, except in damages.  This is, in effect, in all cases, allowing the party the election either to pay damages, or to perform the contract or covenant, at his own pleasure.  But courts of equity have deemed such a course wholly inadequate for the purpose of justice ; and considering it a violation of moral and equitable duties, they have not hesitated to interpose, and require from the conscience of the offending party a strict performance of what he can not, without manifest wrong or fraud, refuse.  The jurisdiction of courts of equity to decree a specific performance of contracts is not dependent upon, or affected by, the form or character of the instrument.  What these courts seek to be satisfied of is, that the transaction in substance amounts to, and is intended to be, a binding agreement for a specific object, whatever may be the form or character of the instrument.  Courts of equity look to the substance of the transaction, and the primary object of of the parties, and, where that requires a specific performance, decree accordingly.  The ground of the jurisdiction is that a court of law is inadequate to decree a specific per-

formance, and can relieve the injured party only by a compensation in damages, which, in many cases, would fall far short of the redress which his situation might require. Wherever, therefore, the party wants the thing in species, and he can not otherwise be fully compensated, courts of equity will grant him a specific performance. It does not proceed upon any distinction between real estate and personal estate, but upon the ground that damages at law may not, in the particular case, afford a complete remedy. While courts of equity will not generally decree performance of a contract for the sale of stock or goods, not because of their personal nature, but because the damages at law, calculated on the market price of the stock or goods, are as complete a remedy for the purchaser as the delivery of the stock or goods contracted for; inasmuch as with the damages he may ordinarily purchase the same quantity of the like stock of goods, yet the truth is, that, upon the principle of natural justice, courts of equity might proceed much further, and might insist upon decreeing a specific performance of all *bona fide* contracts; since that is a remedy to which courts of law are inadequate. Such relief in equity would not wholly subvert the remedies by action of the case and action of covenant; for it is against conscience that a party should have a right of election, whether he would perform his covenant or only pay damages for the breach of it. But on the other hand, there is no reasonable objection to allowing the other party, who is injured by the breach, to have an election, either to take damages at law, or to have a specific performance in equity; the remedies being concurrent but not coextensive with each other. But although the general rule is not to entertain jurisdiction in equity for specific performance of agreements respecting goods, chattels, stock, choses in action, and other things of a merely personal nature, yet the rule is limited to cases where a compensation in damages furnishes a complete and satisfactory remedy. And although the court may act merely by injunction to prevent a breach of a particular agreement, it in effect secures thereby a

specific performance.   Where the specific performance of a contract respecting chattels will be decreed upon the application of one party, courts of equity will maintain the like suit at the instance of the other party, although the relief sought by him is merely in the nature of compensation for damages or value; for in all such cases the court acts upon the ground that the remedy, if it exists at all, ought to be mutual and reciprocal, as well for the vendor as for the purchaser.   And, in a note appended to the author's text, it is admitted that it is difficult to reconcile all the cases in which the courts of equity have compelled the performance of agreements, or refused to do so; and in some cases, where performance has been denied, it is difficult to reconcile the decisions with the principles of equal justice.   There may be some discrepancies in the authorities, but the main doctrines stand upon the fundamental rule of equity jurisprudence : that there is not a plain, adequate and complete remedy at law.

We have thus recited some of the fundamental principles upon which the equitable remedy by specific performance is grounded, and we may deduce from them this simple and, for our purpose, sufficient statement.   Whenever parties have fairly entered into a valid and binding contract, and one of the parties refuses to perform such contract according to its terms, and such contract, and the situation of the parties are of a nature that the court may decree a specific performance, and there is not a plain, adequate and complete remedy at law, a court of equity will interpose and decree a specific performance of such contract.

By citing the text of the principles of equity jurisprudence, we do not mean to be understood that a contract of insurance is of the exact nature of a chattel or of stock, but it is a chose in action, and as such may properly be classified under the general head of personal property, as distinguished from real estate, and no just reason is perceivable why the principles governing specific performance relating generally to personal estate, should not apply to any contract of a personal nature, such as an insurance policy may fairly be regarded to be.

It needs no argument to prove that the contract entered into between the complainant and defendant was valid and binding, and fairly entered into, and it is admitted the defendant refuses to perform the same according to its terms. It therefore only remains for us to determine whether such contract, and the situation of the parties, are of such nature that a specific performance may be decreed, and whether there is not a plain, adequate and complete remedy at law.

The first insistence of counsel for defendant in error is, in effect, that of confession and avoidance; that is to say, that if the assessment made is largely in excess of the amount the insurer was authorized to levy under the conditions of the insurance contract, the insured was under no obligation to pay it, or take notice of it, and the assessment being thus too large was void, and would not constitute a defense upon the policy for any loss incurred; (2) the beneficiaries alone, and not the insured, may invoke the aid of the court; (3) want of mutuality in the contract; (4) estoppel, and (5) there is a remedy at law.

As we have already stated, it is admitted the assessments made were largely in excess of the amount authorized by the terms of the contract, and if the insured, acting upon the suggestion of counsel for defendant in error, refused merely to pay them for such reason, the consequence would be a forfeiture would ensue, and the insured would thereby be. placed, nominally at least, outside of membership in the association, and for the time being be deprived of all the rights and benefits of such member, whatever they might be. The lapse of time after such forfeiture, and the ceasing to pay assessments, if equal to the period of limitation, would so menace the rights of the beneficiaries as might totally defeat the purposes intended by the insured when such insurance was effected. Considerations like these impel us to the conclusion that a court of equity should not deny its aid for such reasons. While it may be, as contended by the defendant, that the beneficiaries have such an interest in the contract as would give them a standing in court to protect their rights, still we think this can not be held to deprive complainant of the right to require

the contract with himself to be kept. By the course of nature, and from the character of the contract itself, he has sufficient interest to enable him to support it. By the instincts of human nature it is desirable to provide for those to whom our bounty is due. To a certain extent this is a strong incentive to accumulate and own property, and it ought to be, and we think is, all the interest that is required to enable the complainant to maintain the present bill. It is also said there is no mutuality between the parties to the contract; that the court can not enforce it against the complainant, and therefore should not against defendant; and counsel in support of this proposition cite the recent case of Lehman v. Clark, 174 Ill. 279, where the court held a contract of this kind to be unilateral. We do not see how this question arises in the present case. The complainant, who alone has the option to abandon the contract, has not done so, but is seeking to enforce it. This was the nature of the contract when it was made, and defendant was conceded no such option. If complainant elects to enforce his contract, which he does, it has the same force and effect of any other contract, and the complainant being able, as he is, the court will require him to perform the contract on his part as a condition to the relief that may be decreed, and this is all the rule of mutuality demands, and is fulfilled by the situation of the parties in the case presented. It is only where the situation of one of the parties is such under the terms of the contract, or where such situation has changed, so that it is impossible for one of them to perform, that the mutuality required by the rule will defeat the relief sought. Such is not the case here. Upon what principle is complainant estopped from claiming his rights under the contract as it was made by the parties? Because, it is said, the defendant violated it, and complainant acquiesced in such violation. We do not think, under the averments of the bill, he so acquiesced, but a sufficient answer to his point is that the defendant can not be permitted to take such advantage of its own wrong as to create an estoppel against the person wronged. The suggestion that defendant was acting

merely as the trustee of 26,000 other policy holders, puts them in no different attitude, for the actions of the association as trustees were but the acts of the other members by their agent, and whatever a person does by his agent he does himself.

It seems to us no argument is necessary to prove that for the admitted violation of the contract there is no adequate remedy at law. It is conceded the law is that the previous assessments could not be recovered back; the policy had no surrender value, and the complainant having passed the insurable age, with any damages he might recover, could not again purchase other insurance; besides from the very nature of the case, it is impossible that a court of law could compute damages for such a breach of the contract; such damages are not susceptible of ascertainment, thus demonstrating the futility of such an action. It is insisted further that a court of equity will not entertain a bill to prevent a forfeiture, but, as we have already seen, although the court may act merely by injunction to prevent a breach of a particular agreement, it in effect secures thereby a specific performance. Neither is the jurisdiction of a court of equity to enforce by specific performance contracts like the one in this suit new in our own courts, for in Covenant Mutual Benefit Association v. Sears, 114 Ill. 108, it was held that where reliance is had entirely upon the mortuary assessment made upon each death for the payment of benefits to the beneficiaries of a decedent, it would be difficult to realize anything by execution, and the association standing as a trustee of a fund in the hands of its numerous members, but belonging to the beneficiaries, which can be called in for their use, it would seem that a court of equity might properly be resorted to as being capable of affording a more adequate remedy by directing a specific performance of the contract of the defendant by the levying of the proper assessment.

For the error in sustaining the demurrer to the bill the decree of the Circuit Court will be reversed and the cause remanded with directions to overrule the demurrer. Reversed and remanded.