# Grand Lodge Ancient Order of United Workmen v. Jennie Lachmann and Rosabel Lachmann Heilbron.

1. Beneficiary Associations—*A Self-executing By-law.*—The following by-law of a beneficiary association is self-executing: "The financier of each subordinate lodge shall keep a book wherein all assessments of the beneficiary fund shall be entered against each member holding a valid certificate; such entry shall be made not later than the 8th day of the month. On the day succeeding the 28th day of the month, he shall furnish the recorder of the lodge with the names of the members who are in arrears on such assessment and the recorder shall place the same on the minutes of the lodge, and mark such certificates as suspended on the certificate register book, affixing the date thereto, and the beneficiary certificate of each member who has not paid such assessment on or before the 28th day of said month shall, by the fact of such non-payment, stand suspended, whether the provision of this section be complied with or not, and no action upon the part of the lodge or any officer thereof shall be required as essential to such suspension, and such suspension shall constitute a forfeiture and loss of all rights under or granted by such beneficiary certificate."

2. Same—*Waiver of a Forfeiture—Estoppel.*—Where a beneficiary association has by its course of conduct, acts, or declarations, or by any language in its certificate of membership, misled the insured in any way in regard to the payments of his assessments, or created a belief on his part that a strict compliance with the letter of his contract as to the payment of the premium of assessments on the day stipulated would not be exacted, and he, in consequence, fails to pay on the day appointed, the association will be held to have waived the requirement and will be estopped from setting up the condition as a cause for forfeiture.

Assumpsit, on a certificate of a beneficiary association. Appeal from the Circuit Court of Cook County; the Hon. Edward F. Dunne, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed. Opinion filed March 18, 1902.

Matson & Edwards, attorneys for appellant.

Israel Shrimski, attorney for appellees.

Mr. Presiding Justice Freeman delivered the opinion of the court.

This is a suit brought upon a beneficiary certificate issued by the appellant to one Benjamin Lachmann in October, 1891, which provided for payment to his daughters, appel-

lees herein, of $2,000 at the death of the said father. The certificate further provides as follows:

"This certificate is issued upon the express condition that the said Benjamin Lachmann shall in every particular, while a member of said order, comply with all the laws, rules and requirements thereof."

Benjamin Lachmann died suddenly, apparently without previous warning, the night of March 24, 1897. The last payment he had made to the order was an assessment of $2.50 due January 28, 1897, and paid upon that day. Two assessments were due February 28, 1897, which for some reason he failed to pay, and in accordance with the by-laws of the order he was marked suspended by the officer whose duty it was to receive such payments. The by-laws contain the following provision:

Section 12. The financier of each subordinate lodge shall keep a book wherein all assessments of the beneficiary fund shall be entered against each member holding a valid certificate; such entry shall be made not later than the 8th day of the month. On the day succeeding the 28th day of the month, he shall furnish the recorder of the lodge with the names of the members who are in arrears on such assessment, and the recorder shall place the same on the minutes of the lodge, and mark such certificates as suspended on the certificate register book, affixing the date thereto.

The beneficiary certificate of each member who has not paid such assessment on or before the 28th day of said month shall, by the fact of such non-payment, stand suspended, whether the provision of this section be complied with or not, and no action upon the part of the lodge or any officer thereof shall be required as essential to such suspension, and such suspension shall constitute a forfeiture and loss of all rights under or granted by such beneficiary certificate."

This provision is self-executing. Lehman v. Clark, 174 Ill. 279–292. At the time of his death said Benjamin Lachmann had not been re-instated.

The by-laws contain the following provision:

"Section 11. * * * The notice of assessment shall be caused to be published by the Grand Recorder, in the official organ of the order in this State, and such publication

Grand Lodge A. O. U. W. v. Lachmann.

shall constitute the making of one or more valid assessments the sum of which (as provided in section 3), must be paid by each member holding a full or a half-rate certificate of membership in the order, or having received the Workman Degree prior to the death of the member upon whose death the assessment was made.

Notices of assessments shall be printed in the official organ of the order in this State, and published not later than the 8th day of the month in which the assessment is made, and after the 28th day of the same month any member of the order holding a certificate of membership, or having received the Workman Degree prior to the death of the member upon whose death the assessment was made, having failed or neglected to have paid such assessment into the beneficiary fund, shall forfeit and lose all his rights under or granted by his beneficiary certificate.

Section 13. The printing in the official organ of the order in Illinois of an assessment notice, a notice of fines or dues, or any other notice required to be given, over the printed name of the proper officer, shall be deemed a legal and sufficient notice to any member of his liabilities for assessments, fines or other matters stated in said notice, without sending such notice or notices or official organ containing the same to any member of the order, by mail or otherwise."

This official organ thus issued between the 1st and the 8th of every month, was sent to all the members of the order in good standing before the latter date, according to the evidence. The notice of the February assessment was published in the issue for February and mailed to the members on or about the first of the month. It appears that copies of this paper were received at the house of deceased before, and continued to be received after his death, and there is testimony that he received a copy of the March number containing notice of an assessment subsequent to that due February 28th, for non-payment of which he had been suspended. There is evidence also that the deceased received the following :

"AMERICA LODGE, No. 370.
A. O. U. W.
CHICAGO, ILL., March 15th, 1897.

" DEAR SIR AND BROTHER :  You are hereby notified that you are in arrears as 162 follows :

Special assessment......................$ .50
Assessment .......................... 2.50
Dues............................... 1.50
Special R. C. & P. C. T................ 1.68
                                        ———
    Total sum........................$6.18

Which you will please settle for not later than at our next meeting, which will be held on Thursday evening, March 25th, at 8 o'clock P. M., or you will stand suspended without further notice.

                    Yours in C. H. & P.,
                            PETER KUSLER, Recorder.

Address, 468 McLean Ave., City.

One of the appellees testifies that her father showed her this notice the day before his death, and stated his intention to make the payment. He died, as before stated, the night of the 24th of March, and the day following one of his friends finding the notice last above quoted among papers in the desk of the deceased, went to the lodge room of the order the evening of March 25th, the time mentioned in said notice, and tendered payment to the financier of the lodge, who stated that he could not receive it as the man was dead, but that he would have received it if he had been alive. It appears that it was the practice in cases where a member was in arrears and suspended under the by-laws for the financier to take the money, and the delinquent could then be re-instated by vote of his lodge. The provision for re-instatement applicable here is as follows:

"Section 13. Any beneficiary certificate suspended by reason of non-payment of assessments thereon may be renewed if the member be living at any time within a period of three months from the date of such suspension, upon the following conditions. and none other, that is to say: 1. All assessments that have been made during the time of suspension shall be paid, including the pending assessment. 2. After thirty days a certificate of good health shall be furnished by the applicant for re-instatement, at the time the assessments are paid, in the manner and upon the blank appended to this section. 3. The financier shall report the same to the lodge at its next regular meeting; a vote of the lodge shall be taken and if a majority of the

votes cast be in favor of re-instatement, the member shall be re-instated. When all these conditions have been complied with, the beneficiary certificate shall be held as renewed and in full force, and not before, and the record of the re-instatement shall be made upon the minutes of the lodge at its next meeting."

The material question presented by this record is whether the notice last quoted, dated March 15, 1897, subsequent to the default in the assessments payable February 28, 1897, constituted a waiver on the part of appellant of the default or an estoppel. It is claimed also that the levy of other assessments subsequent to February 28th, notices of which were published in the official organ of the order which continued to be sent the deceased in the usual course after default, and the forfeiture of his benefit certificate thereby caused, constitute additional evidence of such waiver.

It appears that the deceased, had he lived, could have been re-instated upon conditions mentioned in the by-laws within thirty days after default by simple payment of arrears and vote of his lodge. This seems to have been a not uncommon practice, where members omitted through forgetfulness or otherwise to make payments within the time limited, and were, by reason of such omission, suspended. Such members took the risk of losing the benefits in case death occurred in the meantime, but had no difficulty, apparently, in getting back into full membership. The deceased would, as there is evidence tending to show, have been re-instated in like manner had he lived twenty-four hours longer. There is, therefore, no inference properly to be drawn from his continuing to receive copies of the official organ containing notices of the levies of assessments in the usual form, that there was an intention of waiving his suspension. Something more than this is necessary to constitute a waiver. No such intention on the part of appellant is thereby shown, and no change was thereby effected in the conduct or situation of the deceased.

As we have said, the provision in the constitution and by-laws whereby the beneficiary certificate of a member who has not paid an assessment on or before the 28th day

of the month is suspended by the mere fact of such non-payment, is self-operating. Such suspension, by the terms of said provision, constituted a forfeiture and a loss of all rights under the beneficiary certificate. There can be no doubt, then, that the deceased, by his failure to pay February 28th, had forfeited and lost all rights "under or granted by such beneficiary certificate" for himself and for his beneficiaries. By his continued delay thereafter he was taking the chances of death without re-instatement, notwithstanding his possible intention to pay up the 28th of the following month. It is said by appellant's counsel that the mere fact that the assessment was called for by the proper officers did not make it valid, and it is argued that proof was necessary to show that the necessity therefor existed by reason of a member's death. (Citing Grand L. A. O. U. W. v. Bagley, 164 Ill. 340.) But the constitution and by-laws provide that the publication of the notice of assessment in the official organ in this State "shall constitute the making of one or more valid assessments," and evidence of such publication is in evidence.

The more serious question, however, is the effect of the notice of March 15th. That notice told the deceased that he was in arrears and requested him to settle not later than the next meeting of March 25th thereafter, "or you will stand suspended without further notice." That this was calculated to lead the deceased to believe that he was not as yet suspended, and would not be if he paid up on the 25th of March, is entirely evident from the language employed. The officer of the lodge whose duty it was to receive the assessments states that he would have taken the money of the deceased on the 24th of March, without any order of the supreme or subordinate lodge, "report it to the next meeting and have him re-instated." A default was not apparently regarded as a very serious matter if the defaulting member paid up within the succeeding thirty days; and we think it evident that the deceased may very well have supposed that he would not stand irretrievably suspended in case of his death before the date mentioned in the notice.

Grand Lodge A. O. U. W. v. Lachmann.

It is urged by appellant's attorneys that this was not a waiver because the local lodge had no right or power to waive a material part of the contract. The local lodge had and could exercise the power conferred in the by-laws to re-instate defaulting members who should pay up within thirty days. It had control of the collection of assessments. The real question, however, as we look at it, is not necessarily whether there was or could be, by the notice, an actual waiver by the local lodge as agent of appellant. It is rather whether appellant is estopped because the deceased was misled by the terms of the notice sent by the local lodge to believe, and had a right to believe from such notice, that he would risk none of his rights, and was not, and would not, stand suspended in case he paid up by March 25th. The notice was certainly calculated to give him that impression. It must be borne in mind that the thirty days within which the subordinate lodge could re-instate without a certificate of good health had not expired, and did not expire until after the time limited in the notice of March 15th. That notice told the deceased that in default of payment at that time he would then "stand suspended without further notice." This was, in effect, an assurance that he had not been treated as suspended as yet, but would be if he continued in default until that date. As is said in Order of Forresters v. Schweitzer, 171 Ill. 325: "Without entering into a discussion of the question at length, we are satisfied that under the constitution and by-laws of the order the relation of the subordinate lodges * * * was that of agency." Whether a general agency or not, is not material. It is evident that within the thirty days the matter of re-instatement of one who had been in default was left by the by-laws with the subordinate lodge to re-instate or refuse to re-instate, as it might see fit, in case the delinquent should pay up. It may be true that the subordinate lodge had no express power to waive the provisions of the constitution and by-laws as to what should create a forfeiture. But having the power of re-instatement and of collecting assessments for the order, it has, we think, estopped appellant

from insisting upon a suspension which it had informed the deceased would not be in force until a future time, at any event, and not at all if he paid up his arrears within a time which had not expired when he died. Deceased had been a member in good standing, apparently, for many years, during which he must have made his payments regularly. It is a fair presumption, and there is evidence to show, that he intended to continue so to do. If so, his beneficiaries ought not to suffer because he was lulled into a sense of security by the notice referred to. In Bacon on Benefit Societies, section 433, it is said :

" If the company has, by its course of conduct, acts or declarations, or by any language in the policy, misled the insured in any way in regard to the payments of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to the payment of the premium on the day stipulated would not be exacted, and the assured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture. In determining whether there has been a modification of the terms of the policy by subsequent agreement, or a waiver of forfeiture incurred by the non-payment of the premium on the day specified, the test is, whether the insurer, by his course of dealing with the assured, or by the acts and declarations of his authorized agents, has induced in the mind of the insured an honest belief that the terms and conditions of the policy declaring a forfeiture in event of non-payment on the day and in the manner prescribed will not be enforced, but the payment will be accepted on a subsequent day, or in a different manner; and when such belief has been induced and the insured has acted on it the insurer will be estopped from insisting on the forfeiture."

There are other questions raised in the briefs, which in view of the conclusion stated we need not consider at length. The judgment of the Circuit Court must be affirmed.