FAUROT v. SWAN.

1. LIFE INSURANCE—BENEFICIAL ASSOCIATIONS—ASSESSMENTS—LI-
ABILITY OF MEMBERS.

   The obligation of members of a beneficial association to pay
   assessments rests in contract relations, express or implied, or
   is imposed by the statute under which the association is or-
   ganized; and where one joining such association promises to
   pay assessments, but for default in the payment thereof his
   rights are forfeited, he is liable for said assessment, but for
   none made thereafter.

2. SAME.

   Where the law under which a beneficial association is incor-
   porated (Act No. 83, Pub. Acts 1887) does not impose an obli-
   gation on its members to pay assessments, and one joining it
   does not expressly promise to pay them, and the contract pro-
   vides that the rights of a beneficiary will be forfeited, with-
   out action, if the assessments are not paid within a month, a
   promise of the member to pay, making him personally liable,
   will not be implied.

Appeal from Wayne; Mandell, J. Submitted Novem-
ber 18, 1908. (Docket No. 131.) Decided December 21,
1908.

Petition by Fred C. Wetmore and others for the disso-
lution of the Grand Lodge of the Ancient Order of United
Workmen of the State of Michigan, and the appointment
of receivers. James Swan and George Latcham were ap-
pointed receivers. Jessie M. Faurot and another and
Mary Cash and another intervened praying for an order
requiring the receivers to collect certain assessments for
the payment of death claims. From an order dismissing
the intervening petitions, they appeal. Reversed and re-
manded.

*L. F. Humphrey* and *H. H. & B. E. Barlow*, for interveners Faurot.

*William J. Griffin* (*John H. O'Leary*, of counsel), for interveners Cash and Bell.

*Fred C. Wetmore* (*James Swan*, of counsel), for defendant receivers.

The Grand Lodge of the Ancient Order of United Workmen for the State of Michigan was organized (reincorporated) under the provisions of Act No. 83, Pub. Acts 1887, filing its articles of association in the office of the secretary of State February 8, 1888. The act referred to is entitled, "An act to provide for the incorporation of lodges of the Ancient Order of United Workmen," and it provides (section 2) that any 10 or more persons residents of this State and members of a grand lodge of the Ancient Order of United Workmen of the State of Michigan that has been duly chartered by the supreme lodge of the said order, etc., may make and sign articles of association setting forth their names, titles, and places of residence, the corporate name by which the association shall be known in the law, the place of its business office, "and the purposes of the association, which shall be to promote the general welfare of the fraternity known as the Ancient Order of United Workmen, to improve the mental, moral, and social condition of the members of said fraternity, and to provide for the relief of the families and heirs of deceased members of the said fraternity." Among the powers conferred by the act is the power to create, hold, and disburse beneficiary, relief, general, or other funds for the benefit of sick or disabled members or for the families and heirs of deceased members of subordinate lodges, and the power to levy assessments upon the members of subordinate lodges for the purpose of raising beneficiary, relief, general, or other funds. The said grand lodge adopted a constitution, laws, rules, and regulations which have been from time to time somewhat changed and modified. Not

all members of the order are beneficiary members. In a book referred to in the record, containing a printed copy of the constitution, general laws, and rules of the order which were in force at the time of the filing of the original petition in this cause, under the head, "Objects of the Order," is the following:

"To pledge its membership to the payment of a stipulated sum of money to such beneficiaries under its laws, rules and regulations, as each member while living may designate to receive it."

Said grand lodge created a beneficiary fund, and the sections referring to said fund and of interest here are the following:

"SEC. 38. In order to provide for the payment of a sum not to exceed $2,000 to the beneficiaries of all Workmen degree members of the order in good standing upon the death of such members, a beneficiary fund is hereby established by the Grand Lodge of the Ancient Order of United Workmen of the State of Michigan, in accordance with the laws, rules and regulations of the Supreme Lodge of the Ancient Order of United Workmen.

"SEC. 39. The beneficiary fund shall be composed in the first instance of a sum equal to one assessment, to be paid by each and every member as a part of the admission fee before the Workman degree is conferred, and in the second place, from the proceeds of assessments collected from time to time from the members. * * *

"SEC. 46. The beneficiary fund shall be composed of an amount equal to one assessment collected for that fund from each member when initiated, and all moneys collected from the members from time to time on account of current or back assessments."

Under another section, which also contained the schedule of rates to be paid by members, it is provided that each beneficiary member shall, unless notified to the contrary, pay each month into the beneficiary fund an assessment in accordance with the foregoing schedule of rates in proportion to the amount of his certificate, and it is provided in another section that, when certain officers shall decide that it is not necessary to pay any assessment

for any month, the member shall be notified of the fact. Beneficiary certificates were issued for $500, $1,000, and $2,000; each certificate after the year 1888 containing the following:

"That Bro. ———, a workman degree member of ——— Lodge No. ——— of said order, located at ———, in the State of Michigan, is entitled to all the rights and privileges of membership in the Ancient Order of United Workmen of the State of Michigan, and to designate the beneficiary to whom the sum of ——— thousand dollars of the beneficiary fund of the Order shall, at his death, be paid. This certificate is issued upon the express condition that said ——— shall, in every particular, comply with all the laws, rules, and requirements of said order. He designates as beneficiary under the terms hereof ———, bearing to him the relation of ———."

Certificates were issued upon written applications. The form used prior to the year 1897, besides containing a direction that the amount be paid to a person named, contained a provision that the applicant agreed that compliance on his part with all the laws, regulations, and requirements existing or thereafter enacted by the order was an express condition upon which the applicant was entitled to participate in the beneficiary fund, and to have and enjoy the other benefits of the order. The form of application used after the year 1897 contained the following:

"I do also agree that this application shall be, become, and form part of my contract with said grand lodge, and that I will, within the time provided in said laws, rules, and usages, pay all assessments, calls, and other demands made upon me, and that should I fail or neglect to so pay or to conform to, abide by or observe any rule, law or usage of said grand lodge and of the Order, my membership therein, and my medical examination and the agreements and warranties therein contained, and also all rights, benefits and privileges of my beneficiaries, heirs and such other persons, shall cease and terminate."

Referring again to the laws of the said grand lodge, it appears that each member initiated and each member re-

instated or admitted by card from another jurisdiction is not liable for any assessments for the beneficiary and guaranty funds other than the initiation assessments for the month in which he was initiated, reinstated, or admitted by card, "but he shall be liable for and shall pay the assessments of the month following the month of his initiation, reinstatement or admission."

Sections 28, 29, 77, and 78 of article 5 of the general laws are as follows:

"SEC. 28. Any member failing or neglecting to pay all assessments for the beneficiary or guaranty funds to the financier of the lodge of which he is a member, or before the 28th day of the month in which said assessments are payable, shall forfeit all his rights as such member, shall stand suspended from all the rights, benefits and privileges of the order from and after that date, and shall not be reinstated except as hereinafter provided.

"SEC. 29. Any suspended member who has forfeited all his rights by reason of nonpayment of assessments for the beneficiary or guaranty funds, may be reinstated at any time within three months from the date of forfeiture thereof, provided he shall pay all assessments that have been made during that time, including the assessment for the nonpayment of which he was suspended, and the pending assessments, and further provided that such suspended member shall, at the time of such payment, certify that he is at that time in sound bodily health, in the manner and form and upon the blank provided for that purpose by the grand lodge. * * *

"SEC. 77. Any member of the order in good standing may sever his connection with the order at any time by paying all assessments, dues and fines charged against him, or for which he is liable, and surrendering his beneficiary certificate, when a final card shall be issued to him by the grand lodge, free of cost.

"SEC. 78. Any member who makes application for a final card for the purpose of severing his connection with the order, or any member who without making formal application accepts a final card, does upon such application or acceptance surrender all rights, benefits and privileges that he may have acquired by virtue of his membership in the order."

On August 12, 1907, the trustees of the said grand

lodge filed a petition in the circuit court for the county of
Wayne, in chancery, setting out that the said corporation
had in its beneficiary fund $8,643.59 and in the general
fund $4,855.63; that the proceeds of the assessment levied
upon the members in the month of June, 1907, had not all
been received, the amount yet to be received being about
$2,500; that an assessment had been levied upon the mem-
bers on the 1st day of July, 1907, from which it was estima-
ted there would be received about $6,000; that it had a de-
mand for about $80,000 against the supreme lodge of the
same order which if paid would be placed to the credit of
the beneficiary fund; that it owned office furniture and
fixtures of the value of about $500; that the corporation
was not owner of any property, real or personal, other
than stated; that the corporation was indebted to various
persons, beneficiaries of deceased members, to the amount
of about $162,983.40.    An inventory of the assets and an
itemized statement of liabilities were annexed to the peti-
tion.    It was further represented that because of the de-
crease in membership of said corporation, and because of
the large indebtedness aforesaid, it could not pay just de-
mands, and it was prayed that an order might be entered
dissolving the corporation and appointing one or more re-
ceivers of its property and effects.    Such proceedings
were had that two receivers were appointed who entered
upon the discharge of their duties as such receivers.

Appellants are intervening petitioners, and are benefi-
ciaries in a certain certificate issued by said grand lodge
to John M. Faurot, who died June 16, 1907.    They repre-
sented to the court by their said petition that each of the
members of the organization undertook and promised,
when they became members, that as long as they re-
mained members they would be liable to and would pay
all assessments made against them on account of such
beneficiary fund accruing by reason of the death of any
member of such order during the time they were members
thereof, and that they further undertook and agreed to

pay all assessments which might be lawfully made against them for the benefit of such beneficiary fund; that such agreement and promise is contained in the application, certificate, ritual, constitution, and by-laws and rules and regulations of said grand lodge.   The prayer of the petition is—

"That this court may ascertain and determine the assessments made against the several classes of members of said order for the payment of such unpaid death claims, and may ascertain and determine the liability of the several members of said corporation for assessment of such death claims, and may ascertain and determine the members of such order liable for such claims, and may direct the receivers of said corporation to take all necessary steps for the collection of such assessments, and further direct such receivers to assess against said members, according to their several liabilities, a sufficient sum for the payment of such unpaid death claims, and to proceed with the collection thereof and for such other and further relief as your petitioners may be entitled to."

This petition was answered by the receivers, and in their answer they deny that each of the members of said organization undertook and promised, when they became members, that so long as they remained members they would be liable to and would pay all assessments made against them on account of such beneficiary funds accruing by reason of the death of any member of such order during the time they were members thereof, and deny that members of said order were indebted individually to the beneficiaries of deceased members, or that said members are liable personally for any assessments levied, or that defendants as receivers have any power or authority to collect any assessments already levied or to levy any further assessments.   It is stated in said answer that for several years prior to July 1, 1907, members of said order had paid assessments each month; that in the month of July, 1907, assessments were paid by 1,023 members; and that 1,045 members failed to pay the July assessment, and were, by reason of such nonpayment, suspended from member-

ship; that in August, 1907, none of the members paid the assessment, and that all of the members were thereby suspended from membership, so that on August 31, 1907, there were no members remaining in said order upon whom any assessments may be levied or from whom any assessments may be collected to pay the unpaid death claims. The petitions of interveners were dismissed, and, from the order entered, said petitioners have appealed.

OSTRANDER, J. (*after stating the facts*). Whether the members of the lodge are personally liable to pay assessments, or whether the contract between the members and the organization is unilateral, is the broad question presented. That the obligation to pay assessments, if it exists, rests in contract relations, express or implied, or is imposed by the statute, is not disputed, and is indeed well settled. See *Calkins* v. *Angell*, 123 Mich. 77; *Ellerbe* v. *Barney*, 119 Mo. 632 (23 L. R. A. 435); *Provident Mutual Relief Ass'n* v. *Pelissier*, 69 N. H. 606; *Fulton* v. *Stevens*, 99 Wis. 307; *New Era Life Ass'n* v. *Rossiter*, 132 Pa. 314; *Gibson* v. *Megrew*, 154 Ind. 273 (48 L. R. A. 362); *Lehman* v. *Clark*, 174 Ill. 279 (43 L. R. A. 648); *L'Union St. Jean Baptiste de Pawtucket* v. *Ostiguy*, 25 R. I. 478 (64 L. R. A. 158).

The generally accepted rule with respect to ordinary life-insurance contracts is that the payment of the premium or assessment is only a condition precedent of the liability of the company, and that the insured may pay or not as he pleases. The assessment or premium is a debt only when there is an absolute promise to pay. 2 Bacon on Benefit Societies and Life Insurance (3d Ed.), § 357. The statute does not in terms impose an obligation to pay assessments. Prior to the year 1897 no one joining the order as a beneficiary member did expressly promise to pay them. Whether they made use of one or the other form of application, the rights of all beneficiary members were alike forfeited from and after the 28th day of the month in which an assessment was payable without any

action upon the part of the lodge or of any officer thereof, if such assessment remained unpaid. Undoubtedly the founders of the order were of opinion that a monthly assessment upon members at the rates fixed in the laws of the order would produce a fund sufficient to pay losses accruing with the death of members. However this may be, the plan adopted does not make the organization the mere collector and distributer of an assessment to be made after, and because of, the death of a member. Each certificate contains a promise to pay a stipulated sum. A fund is created out of which such sums are to be paid. This fund is replenished by regular, perhaps upon occasion by special or extra, assessments. There is apparent in this plan no notion of an obligation, express or implied, to pay an assessment on, and because of the death of, each member occurring during the membership of the assured. There is apparent the idea that they are payments made in advance, in consideration of a risk assumed or continued by the organization, each payment operating to keep the certificate of a member in force until the next assessment is due and payable. This consideration is not controlling in a case where the promise of the member to pay assessments is made out. But in a case where the promise of the member to pay assessments, if it exists at all, must be made out by fair interpretation of the statute, the constitution and laws of the organization, it supports an argument opposed to the idea that such a promise ought to be found to exist. It is consistent with the idea that, having paid for all benefits received, it is optional with the member to relinquish the right to further benefits by declining to pay the assessment immediately levied, consistent with the idea that payment of an assessment was a condition merely to any liability of the organization.

It will be assumed that each member of this order understood that one of its objects was to pledge its membership to the payment of a stipulated sum to beneficiaries of other members under conditions set out, and that each understood that the money necessary for the purpose must

be contributed by the members. Each knew that a member might at any time sever his connection with the order by paying all assessments, dues, and fines charged against him. These and other considerations, it is said, warrant, and, indeed, require, the conclusion that the relations of each member to the organization and to other members were those of an insurer as well as those of one insured. This might be admitted if an agreement could be reached concerning the nature and extent of the relation which each member, viewed as an insurer, bore to the organization and to other members. But it is evident that, when we have determined what this relation is, we have also determined the point in issue. The business carried on by the lodge, so far as we are concerned with it, was the business of life insurance. In the exercise of the general statute power to provide for the relief of families and heirs of deceased members, it had a wide choice of methods to be employed. An essential element in any plan which it could adopt is the one of mutual interest and mutual responsibility of members. But the conditions under which this mutual interest and responsibility should begin and cease were also necessarily determinable by the organization, and, when made, such determination was evidenced by the terms of the contract employed. There is nothing in the general nature of the object to be accomplished which requires courts to read into the contracts actually made a promise of the member to pay an assessment made upon him when the contract expressly provides a penalty, enforced without action of the organization, for a default in the payment. When the penalty was incurred, all relations between the member and the organization, whether those of insurer or insured, were ended. The right of the organization to so terminate them is not disputed. We are not able, by fair construction of the statute, constitution, and laws of the order, the application and the certificate, as they existed previous to 1897, to find an undertaking on the part of a member to pay assessments made upon him. In this we are not in agree-

ment with the conclusion reached by a majority of the judges in *Ellerbe* v. *Barney,* 119 Mo. 632 (23 L. R. A. 435), and by the court in *Provident Mutual Relief Ass'n* v. *Pelissier,* 69 N. H. 606. We are not satisfied with the reasoning employed in either case in support of the proposition that an agreement to pay assessments existed. We are in accord with the decisions in *Lehman* v. *Clark,* 174 Ill. 279 (43 L. R. A. 648), and *Gibson* v. *Megrew,* 154 Ind. 273 (48 L. R. A. 362).

Much has been said herein which need not have been said if we admitted the contention that, whether there was or was not an express agreement to pay assessments, the only means for enforcing payment is forfeiture of rights. The agreement of those members who entered the order after the form of application employed in 1897 and thereafter was adopted and who used the form is to pay all assessments made. An assessment was made by the laws of the order, due and payable each month before the 28th day thereof. The form of notice used in connection with the levy of a special assessment, if any such was made, does not appear. But an assessment being called, regularly by the law or specially by notice, was an assessment made on the member, and his liability to pay it became fixed. The fact that they were not paid, and that forfeiture of rights resulted, does not affect the contract obligation to pay assessments made before forfeiture of the member's rights. *Fulton* v. *Stevens,* 99 Wis. 307. It follows that the association, and therefore its receivers, had the right to collect such assessments by suit, and had not the right to collect assessments made after membership had expired. It does not follow, however, that the prayer of intervening petitioners should be granted. The amount of a single assessment from each member who is liable under the rule announced is the limit of recovery in an action at law. According to the record, assessment rates run all the way from 62 cents to $19.30, depending upon the amount of the certificate and the attained age of the member. Whether funds on hand

and the services of the receivers and of counsel can be profitably employed in attempts to collect these assessments is a question which upon this record cannot be answered.

A decree will be entered in this court reversing the decree below, and in accordance with this opinion, but reserving for the determination of the court below the question whether the prayer of interveners should be granted. Neither party will recover costs of this appeal.

GRANT, C. J., and BLAIR, MONTGOMERY, and BROOKE, JJ., concurred.